J-A13043-20

2020 PA Super 208

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
            Appellee           :
                                         :
         v.                      :
                                         :
WALDEMAR RIVERA,                :
                                         :
           Appellant          :       No. 2101 EDA 2019

Appeal from the Judgment of Sentence Entered March 1, 2019
in the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004317-2017

BEFORE:    BENDER, P.J.E., LAZARUS, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:              Filed: August 25, 2020

Waldemar Rivera (Appellant) appeals from the March 1, 2019 judgment of sentence[1] imposed after a jury found him guilty of second-degree murder,[2] robbery, burglary, and three counts of conspiracy (second-degree murder; robbery; burglary). Upon review, we vacate Appellant's convictions and sentences for conspiracy to commit second-degree murder and conspiracy to commit burglary, and affirm his judgment of sentence in all other respects.

---

[1] Appellant purported to appeal from the June 21, 2019 order denying his post-sentence motion. "In a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted). We have corrected the caption accordingly.

[2] In Pennsylvania, felony-murder and second-degree murder refer to the same offense, codified at 18 Pa.C.S. § 2502(b), and are referred to interchangeably in our jurisprudence and within this opinion.

*Retired Senior Judge assigned to the Superior Court.

We begin with the following factual summary provided by the trial court.

> Lehigh County Homicide Task Force was dispatched to a body discovered [] on August 13, 2017, in the city of Allentown[.] Police arrived and found [Jermaine Jerome Taylor (Victim)], deceased in his bedroom on the third floor of his residence. Numerous shell casings were found scattered on the floor but no firearms were located on scene. Police learned that [Victim's] 10-year-old daughter was present at the time of the shooting and [was] hiding in the room. The investigation revealed that [Victim] was shot and killed during a home invasion robbery by a group of four individuals including [Appellant].
>
> While canvassing the crime scene, the police noticed blood droplets dispersed throughout the residence. Blood droplets were discovered throughout the bedroom, down the stairs, and outside the residence. Police followed the blood trail through the city streets and discovered a suspect, later revealed to be co-conspirator Isaac Navarro, with his hand bandaged. Navarro was interviewed and the information eventually led the police to the arrest of the other conspirators.
>
> The co-conspirators all testified at trial about their role in the conspiracy that led to the death of [Victim]. The conspirators believed that [Victim] was involved in dealing drugs and had money and drugs in his home. A scheme was formed by [Appellant] and his friends to rob [Victim] through threat of force and the group armed themselves with a gun. [Appellant] and his co-conspirators proceeded to sneak through alleyways on foot, and under cover of darkness broke into [Victim's] residence.
>
> Upon entering the residence, the group assaulted [Victim] and threatened him with a gun. The assailants dragged [Victim] upstairs and demanded that he open his safe. [Victim] opened his safe, but grabbed his .40 caliber handgun, and fired a single shot which struck co-conspirators Brandon Eanes and Sasha Vargas. [] Navarro also injured his hand from striking [Victim] repeatedly. The testimony at trial revealed that [Victim] was then shot multiple times in the presence of his minor daughter and left for dead. [Victim's] cause of death was multiple

gunshot wounds. The testimony placed the gang of thieves' gun in the possession of [Appellant]. The group fled on foot with [Victim's] gun, a samurai sword, cash, and some marijuana.

Surveillance photos and video were recovered from nearby alleyways confirming the presence of all conspirators. [Victim's] handgun was turned in to the police by [Appellant's] mother a few months after the robbery. The .380 caliber firearm used to murder [Victim] was never recovered.

[Appellant] was arrested and interviewed on August 16, 2017, after being provided with his **Miranda**[3] warnings. [Appellant] admitted to breaking and entering the residence and participating in the robbery of [Victim]. However, [Appellant] claimed [] Eanes had the gun and alleged that he got nothing from the robbery. [Appellant] asserts that he did not shoot [Victim].

Trial Court Opinion, 6/21/2019, at 3-4 (footnotes omitted).

Based on the foregoing, Appellant was charged with one count each of criminal homicide, robbery, and burglary, and three counts of conspiracy (criminal homicide; robbery; burglary). Appellant proceeded to a jury trial from February 26, 2019 to March 1, 2019. The jury heard testimony from, *inter alia*, Navarro, Eanes, and Vargas. During trial, Appellant attempted unsuccessfully to locate Victim's daughter in order to call her as a defense witness. Therefore, Appellant sought to introduce her videotaped interview with police, which occurred a few hours after Victim's death, based on her being an unavailable witness and the interview qualifying under either the excited-utterance or present-sense-impression exceptions to the rule against hearsay. **See** N.T., 2/28/2019, at 100-04. The trial court denied Appellant's

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

request, concluding that Victim's daughter was not unavailable for purposes of the hearsay rule, and regardless, the interview did not fall within either exception. *Id.* at 107-08.

On March 1, 2019, the jury found Appellant guilty as indicated above.[4] Appellant was sentenced that same day to the following terms of incarceration: life imprisonment without parole for second-degree murder; 10 to 20 years for robbery; 10 to 20 years for burglary; 20 to 40 years for conspiracy to commit criminal homicide;[5] 10 to 20 years for conspiracy to

---

[4] As to Appellant's conviction of conspiracy to commit second-degree murder, we note the following.

> The Crimes Code does not expressly set forth that one can be found guilty of second-degree murder as a conspirator. Other jurisdictions have determined that one cannot conspire to commit felony murder. This Court has also repeatedly noted that one cannot attempt to commit felony murder because an attempt is a specific intent crime, as is conspiracy. We note, however, that our Supreme Court has concluded that one can conspire to commit third-degree murder, which does not require proof of a specific intent to kill.

*Commonwealth v. Mitchell*, 135 A.3d 1097, 1101 (Pa. Super. 2016) (citations omitted). Because Appellant does not challenge his conspiracy to commit second-degree murder conviction on this basis, and we ultimately vacate this conviction for reasons discussed *infra*, we need not consider this further.

[5] As noted *supra*, the jury found Appellant guilty of conspiracy to commit second-degree murder. The trial court sentenced Appellant to 20 to 40 years of incarceration for conspiracy to commit second-degree murder, but subsequently changed the sentencing sheet to read "conspiracy to commit criminal homicide," while keeping the sentence the same. *See* Corrected Sentence Sheet, 3/4/2019. This was error. Inchoate crimes have the same maximum sentences as the underlying object crime. *See Commonwealth*
*(Footnote Continued Next Page)*

- 4 -

commit robbery; and 10 to 20 years for conspiracy to commit burglary. All sentences were set to run concurrently, except for the 10-to-20-year term of incarceration for conspiracy to commit robbery, which was ordered to run consecutively to the other five charges.

On March 6, 2019, Appellant filed a post-sentence motion, alleging that the felony-murder rule[6] is unconstitutional, the evidence was insufficient and the verdict was against the weight of the evidence, the consecutive sentence was "excessive and unreasonable[,]" and the trial court erred in excluding the videotaped interview of Victim's daughter as hearsay not subject to an exception. Post-Sentence Motion, 3/6/2019, at 2. The trial court ordered Appellant and the Commonwealth to file briefs in response to

_____
*(Footnote Continued)* ———————————

***v. Hoke***, 962 A.2d 664, 668 (Pa. 2009), *citing* 18 Pa.C.S. §§ 106(b) and 905(a). Therefore, the trial court should have sentenced Appellant at this count to life imprisonment without "correcting" the sentence sheet in conflict with the jury's verdict. However, we need not resolve these sentencing issues, because, as discussed *infra*, we vacate Appellant's conspiracy to commit second-degree murder conviction and sentence.

[6] As discussed *infra*, our Supreme Court has described the felony-murder rule thusly.

> When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony.

***Commonwealth v. Legg***, 417 A.2d 1152, 1154 (Pa. 1980) (footnote omitted).

Appellant's post-sentence motion. Order, 3/20/2019. The parties complied.

On June 21, 2019, the trial court denied Appellant's post-sentence motion by

order and opinion.

This timely filed notice of appeal followed.[7] On appeal, Appellant

raises the following issues.

> [1] Whether the trial court erred in denying [Appellant's] motion regarding an eyewitness being unavailable?
>
> [2] Whether the evidence presented at trial was insufficient to support the verdict and whether the verdict was against the weight of the evidence?
>
> [3] Whether the trial court erred in imposing a consecutive sentence for robbery?
>
> [4] Whether the felony[-]murder conviction should be overturned?

Appellant's Brief at 9 (suggested answers and unnecessary capitalization

omitted; reordered for ease of disposition).

### Admission of Videotaped Statement

We begin with Appellant's argument that the trial court erred in

precluding the admission of the videotaped police interview of Victim's

daughter. Appellant's Brief at 27.[8] Specifically, Appellant avers that she

---

[7] Appellant and the trial court complied with Pa.R.A.P. 1925. In lieu of a Rule 1925(a) opinion, the trial court referred us to its June 21, 2019 opinion and order denying Appellant's post-sentence motion. Order, 8/14/2019.

[8] We note that Appellant also argues that the trial court erred in denying his motion to require the attendance of Victim's daughter at trial because she was a material witness and the Commonwealth failed to disclose her change
*(Footnote Continued Next Page)*

was unavailable for purposes of the rule against hearsay, and her statements during the interview were admissible under either the excited-utterance or present-sense-impression exceptions. Appellant's Brief at 29-30.

We begin with our standard of review.

> An appellate court's standard of review of a trial court's evidentiary rulings[,] which include rulings on the admission of hearsay[,] is abuse of discretion. However, whether a defendant has been denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States *via* the Fourteenth Amendment, is a question of law, for which our

*(Footnote Continued)* ———————

of address. **See** Appellant's Brief at 27, 29. Additionally, Appellant alleges that the interview was nontestimonial. **Id.** at 30-31. However, our review of the record, including Appellant's occasional pinpoint citations to the reproduced record, reveals the record is devoid of any such motion, asserted discovery violation, or claim that the interview was admissible because it was nontestimonial. Accordingly, Appellant failed to preserve these issues for appeal. **See** Pa.R.A.P. 302; **Commonwealth v. Baker**, 963 A.2d 495, 502 (Pa. Super. 2008) (finding issue waived where Baker failed to point to the location in the record where the claim was preserved, and noting that "the transcripts in this case are voluminous, and it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review").

Moreover, as to Appellant's nontestimonial argument, Appellant invokes **Davis v. Washington**, 547 U.S. 813 (2006), which distinguished testimonial and nontestimonial hearsay for purposes of violations of the Confrontation Clause, confirming that the protections of the Confrontation Clause attach only to testimonial hearsay statements. However, Appellant did not seek to exclude the video as violating his Confrontation Clause rights; he sought to **admit** the video. To the extent he argues that a hearsay statement being nontestimonial is independent grounds for admissibility, it is not, and he does not provide any authority other than **Davis**, which does not support such an assertion, or any argument. Thus, he has failed to develop this issue in any meaningful way, and we also find waiver on this basis.

standard of review is *de novo* and our scope of review is plenary.

***In re N.C.***, 105 A.3d 1199, 1210 (Pa. 2014) (citations omitted).

"Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1054 (Pa. Super. 2019) (citation and quotation marks omitted). At trial, Appellant argued Victim's daughter was unavailable and sought to introduce the statement under the present sense impression or excited utterance exception.

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
> > (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> >
> > (2) refuses to testify about the subject matter despite a court order to do so;
> >
> > (3) testifies to not remembering the subject matter, except as provided in Rule 803.1(4);
> >
> > (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or
> >
> > (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
> >
> > > (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Pa.R.E. 804(a). If a witness is unavailable pursuant to subsection (a), the following types of statements will not be subject to exclusion by the rule against hearsay.

> (1) Former Testimony…
>
> (2) Statement Under Belief of Imminent Death…
>
> (3) Statement Against Interest…
>
> (4) Statement of Personal or Family History…
>
> (5) Other exceptions (Not Adopted) …
>
> (6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability…

Pa.R.E. 804(b).

At the outset, even if we were to conclude that the trial court should have found Victim's daughter was unavailable, Appellant would not be entitled to relief pursuant to Rule 804. Although he claimed she was unavailable and a material witness, Appellant did not invoke any of the subsection (b) exceptions. This is unsurprising, as it is evident that none of them is applicable. ***See id; see also*** Trial Court Opinion, 6/21/2019, at 15 (noting that Appellant "fails to assert which unavailable exception applies" and that "[a]s the Commonwealth aptly explains[,] this rule appears to be completely inapplicable"). Accordingly, we need not address the trial

court's finding of unavailability, and instead turn to Appellant's argument that the statement was admissible under the present-sense-impression or excited-utterance exceptions, mindful of the following.

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> **(1) Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition.
>
> *Comment:* …
>
> For this exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory.
>
> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.
>
> *Comment:* …
>
> This exception has a more narrow base than the exception for a present sense impression, because it requires an event or condition that is **startling**. However, it is broader in scope because an excited utterance (1) need not describe or explain the startling event or condition; it need only **relate** to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the

startling event or condition persists as a substantial factor in provoking the utterance.

There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance. In **Commonwealth v. Gore**, 396 A.2d 1302, 1305 (Pa. Super. 1978), the court explained:

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit ... Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." ... The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Pa.R.E. 803 (emphasis in original).

As noted *supra*, Victim's daughter was interviewed by police a few hours after the shooting. Accordingly, the trial court concluded in its opinion denying Appellant's post-sentence motion that "the videotaped statement was not a present sense impression" because it "was not made by [Victim's daughter] 'while or immediately after' she perceived the murder of her father." Trial Court Opinion, 6/21/2019, at 13. We agree with the trial court, and conclude that it did not abuse its discretion in denying admission of the statement on this basis.

The trial court also concluded that the statement was not an excited utterance.

> [Victim's daughter] had the opportunity to reflect on the events for several hours and was open to outside influences before ultimately being interviewed at the police station. Furthermore, an entire videotaped recording of a police interview is entirely responsive rather than spontaneous. *See* [*Commonwealth v. Boczkowski*, 846 A.2d 75, 96 (Pa. 2004)] (five-year-old child's unsolicited statement to neighbors that he heard his mother screaming in the bathroom was excited utterance).

Trial Court Opinion, 6/21/2019, at 14.

It is beyond peradventure that witnessing one's father being shot to death by intruders is a startling event, and likely more so for a child. However, as the trial court noted and the record confirms, Victim's daughter spoke with multiple individuals after the shooting, including Victim's girlfriend, who found Victim, and police officers. The proffered videotaped statements were taken hours after the startling event, in a different location (the police station), and were given in response to police questioning.[9] Contrary to the requirement that "the nervous excitement continues to dominate while the reflective processes remain in abeyance[,]" Pa.R.E. 803(2) *Comment*, Appellant's counsel argued at trial that Victim's daughter

---

[9] While the statement does not qualify in this case, statements made in response to police questions are not *per se* disqualified from the excited utterance exception. *Commonwealth v. Sanford*, 580 A.2d 784, 789 (Pa. Super. 1990), *abrogated on separate grounds*, *Crawford v. Washington*, 541 U.S. 36 (2004).

- 12 -

was "incredibly composed" and "responsive" during the interview. N.T., 2/28/2019, at 103.

Upon consideration of the foregoing, we cannot conclude that the trial court abused its discretion in concluding the interview did not qualify as an excited utterance. Accordingly, Appellant is not entitled to relief.

<u>Sufficiency and Weight of the Evidence</u>

Appellant next argues "that the evidence at trial was insufficient to sustain the verdicts and that the verdicts rendered were against the weight of evidence." Appellant's Brief at 31.

Preliminarily, we remind Appellant that sufficiency and weight claims are distinct.

> The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[] concedes that there is sufficient

evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (footnote, quotation marks, and some citations omitted).

Before we address the merits of Appellant's sufficiency and weight claims, we must determine whether Appellant has preserved them for our review. *See Commonwealth v. Richard*, 150 A.3d 504, 517 (Pa. Super. 2016). Instantly, the trial court found these claims waived because Appellant raised them in boilerplate fashion in his post-sentence motion, and failed to state, with regard to his sufficiency of the evidence claim, which element or elements the Commonwealth failed to prove beyond a reasonable doubt. Trial Court Opinion, 6/21/2019, at 7.[10]

---

[10] We note that the trial court did not address the adequacy or inadequacy of Appellant's Rule 1925(b) statement because it did not file a Rule 1925(a) opinion, instead referring us to its June 21, 2019 opinion disposing of the post-sentence motion.

In his supporting brief, Appellant did not specify which elements were not proven, instead arguing "that the evidence presented was insufficient to prove him guilty of felony murder, robbery or conspiracy to commit robbery," because the co-defendants' testimonies were inconsistent[11] and there was no DNA or fingerprint evidence linking Appellant to the homicide. Post-Sentence Motion Brief in Support, 5/30/2019, at 6-7. He also assailed the second-degree murder statute's inferred malice, which is discussed at length *infra*. As to his weight claim, Appellant set forth boilerplate weight-of-the-evidence case law, and summarily concluded "that the verdict was against the weight of the evidence for the reasons cited above." *Id.* at 7. It is unclear whether Appellant sought to reference the generic weight-of-the-evidence case law, the arguments he presented in support of his sufficiency-of-the-evidence claim, or something else. Finally, in his Pa.R.A.P. 1925(b) statement, Appellant again raised a combined boilerplate sufficiency and weight claim: "Motion for a new trial on the grounds that the evidence presented by the Commonwealth was insufficient to support the verdict

---

[11] This type of argument is actually a challenge to the weight of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (citations omitted) ("A sufficiency[-]of[-]the[-]evidence review, however, does not include an assessment of the credibility of the testimony offered by the Commonwealth. Such a claim is more properly characterized as a weight of the evidence challenge. Therefore, we find [Wilson] has blurred the concepts of weight and sufficiency of the evidence.").

against the weight of the evidence as there was no intent to kill." Rule 1925(b) Statement (*verbatim*), 8/13/2019, at ¶ 1.

Regarding Appellant's sufficiency of the evidence claim,

[w]e have repeatedly held that [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. … Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient[,] ... the sufficiency issue is waived on appeal.

***Commonwealth v. Ellison***, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations and quotation marks omitted). "Such specificity is of particular importance in cases where[] the appellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Commonwealth v. Brown***, 186 A.3d 985, 990 (Pa. Super. 2018) (citation and quotation marks omitted).

Instantly, Appellant was convicted of second-degree murder, robbery, burglary, and three counts of conspiracy. Each of these crimes involves multiple elements. Appellant's confusing Rule 1925(b) statement may be construed, generously, to read as though Appellant is stating that the Commonwealth failed to prove the element of "intent to kill" beyond a reasonable doubt. However, none of Appellant's convictions contains such an element. Accordingly, he has waived any sufficiency claim on appeal. ***See Commonwealth v. Hoffman***, 198 A.3d 1112, 1125 (Pa. Super. 2018)

(finding sufficiency claim waived for failing to specify the element(s) upon which the evidence was lacking); ***Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa. Super. 2015) (finding sufficiency claim waived because boilerplate Pa.R.A.P. 1925(b) statement failed to specify the element(s) the Commonwealth failed to prove).

Regarding Appellant's weight of the evidence claim,

> [a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; ***Commonwealth v. Priest***, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. ***Commonwealth v. Sherwood***[], 982 A.2d 483, 494 (Pa. 2009).

***Commonwealth v. Thompson***, 93 A.3d 478, 490 (Pa. Super. 2014) (quoting ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012)).

> A boiler[]plate motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," is not a "precise statement of issues and grounds relied upon." Such assignments of error not only do not "foster" but discourage "alert and zealous advocacy," for anyone may make them without giving thought to what the issues really are.

***Commonwealth v. Holmes***, 461 A.2d 1268, 1273 (Pa. Super. 1983) (*en banc*). Thus, this Court held that

> a post-verdict motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," will preserve **no** issue for appellate review unless the motion goes on to specify **in what respect** the evidence was insufficient, or **why** the verdict was against the weight of the evidence.

- 17 -

*Id.* at 1270 (emphasis in original).

On appeal, Appellant combines his sufficiency and weight challenges into a single argument section. After setting forth boilerplate weight-of-the-evidence law, Appellant presents the following argument.

> Specifically, the jury's verdict is against the weight of the evidence, shocks one's sense of justice, and is an abuse of discretion because the jury ignored direct evidence from [] Eanes that he shot and killed [Victim]. [Appellant] admitted his role was his mere presence at the crime scene.

> [Appellant] asserts that the testimony of Navarro and Vargas were perjured, false and riddled with inconsistencies. [Appellant] asserts that the verdict was against the weight of the evidence for the reasons cited above, and more particularly with the absence of any physical evidence linking the defendant to the crime or the crime scene and the jury's reliance on inconsistent testimony.

Appellant's Brief at 36-37.

Thus, Appellant raised only a boilerplate weight claim in his post-sentence motion. In his supporting brief, he included boilerplate case law and concluded, without analysis or argument, "that the verdict was against the weight of the evidence for the reasons cited above." Post-Sentence Motion Brief in Support, 5/30/2019, at 7. Based thereon, the trial court concluded that Appellant waived his weight argument. Trial Court Opinion, 6/21/2019, at 7-8. We agree with the trial court. However, even if Appellant had preserved his weight-of-the-evidence claim, he still would not be entitled to relief.

- 18 -

When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

***Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

In its alternative analysis of the merits, the trial court concluded as follows.

The evidence in this case was presented to the jury over the course of a four-day jury trial. The jury heard testimony from numerous witnesses, including the co-conspirators, and had an opportunity to fairly assess their credibility. [Appellant] assailed the credibility and motivations of the co-conspirators. The Commonwealth presented both direct and circumstantial evidence of [Appellant's] participation in this botched robbery that resulted in the unfortunate death of [Victim]. Whether [Appellant] was truly the gunman is irrelevant for the verdict of murder of the second degree. The verdict is supported by the evidence and in no way shocks this [c]ourt's sense of justice.

Trial Court Opinion, 6/21/2019, at 11.

Upon review, even if Appellant's weight claim were not waived, we discern no abuse of discretion on the part of the trial court. Accordingly, Appellant is not entitled to relief on this claim.

### Discretionary Aspects of Sentence

We next address Appellant's claim that the trial court abused its discretion in imposing a consecutive sentence for conspiracy to commit robbery. Appellant's Brief at 37. We consider this mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the

> issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

**Commonwealth v. Samuel**, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Appellant satisfied the first two requirements: he timely filed a notice of appeal and included a Pa.R.A.P. 2119(f) statement in his brief. However, while he filed a post-sentence motion raising a discretionary-aspects-of-sentencing claim, that claim differs from the claim he presents on appeal. Specifically, in his post-sentence motion, Appellant averred that the consecutive sentence for conspiracy to commit robbery was excessive and unreasonable because the trial court failed to consider the sentencing guidelines and failed to consider adequately mitigating factors regarding Appellant's intellectual abilities. Post-Sentence Motion, 3/6/2019; Post-Sentence Motion Brief in Support, 5/30/2019, at 16-17. In contrast, on appeal, Appellant claims the trial court abused its discretion in sentencing Appellant consecutively on conspiracy to commit robbery because the court expressed bias against Appellant for rejecting a plea offer. Additionally, Appellant avers that the consecutive sentence "was disproportionate to [Appellant's] crimes" and "unduly excessive in relation to the nature of the crime[,]" and that the court failed to consider the "fact that [Victim] was in

possession of illegal drugs and a firearm as mitigat[ing] factors." Appellant's Brief at 38-40.

Based on the foregoing, we conclude that Appellant failed to raise his specific appellate claims in his post-sentence motion, and therefore has failed to preserve his discretionary sentencing claims. *See Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citations and quotation marks omitted); *see also Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.").

### Constitutionality of Second-Degree Murder

We next address Appellant's claim that his second-degree murder conviction contravenes "the 14th Amendment due process and 8th Amendment proportionality standards" because Pennsylvania's "second-degree murder statute permits the use of transferred intent from a felony to provide the necessary *mens rea* for murder." Appellant's Brief at 16.

> As a threshold matter, a statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. Analysis of the constitutionality of a statute is a question of law; therefore,

- 22 -

our standard of review is *de novo*, and our scope of review is plenary.

***Commonwealth v. Brensinger***, 218 A.3d 440, 456 (Pa. Super. 2019) (*en banc*) (citations and internal quotation marks omitted).

A claim of cruel and unusual punishment challenges the legality of a sentence. ***Commonwealth v. Middleton***, 467 A.2d 841, 846 n.5 (Pa. Super. 1983).

> We review the legality of a sentence [under a] *de novo* standard. Our scope of review is plenary.
>
> [D]uly enacted legislation carries with it a strong presumption of constitutionality. We will not find a statute violative of the Eight[h] Amendment's prohibition on cruel and unusual punishment unless it calls for a sentence so greatly disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice.

***Commonwealth v. Smith***, 210 A.3d 1050, 1062 (Pa. Super. 2019) (citations and quotation marks omitted).

> Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.[] § 2502(b). 18 Pa.C.S.[] § 2502(d) defines perpetration of a felony as:
>
>> [t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.
>
> 18 Pa.C.S.[] § 2502(d) (emphasis added). The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim.

The elements of accomplice liability for felony murder were addressed in [**Middleton**, 467 A.2d at 848]:

> In **Commonwealth v. Waters**, [] 418 A.2d 312, 317 ([Pa.] 1980), the court discussed the elements to be proved in order to establish accomplice liability for felony murder, saying that:
>
> > ... [t]he responsibility of persons, other than the slayer, for a homicide committed in the perpetration of a felony require[s] proof of a conspiratorial design by the slayer and the others to commit the underlying felony and of an act by the slayer causing death which was in furtherance of the felony.

Moreover, it was stated by the court in [**Legg**, 417 A.2d at 1154]:

> When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.[]

In **Commonwealth v. Melton**, [] 178 A.2d 728, 731 ([Pa.] 1962), [] our Supreme Court explained that not only the killer, but all participants in a felony, including the getaway driver, are equally guilty of felony murder when a killing by a felon occurs.

The statute defining second[-]degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. **Middleton**, 467 A.2d at 848[]. It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder

determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

***Commonwealth v. Lambert***, 795 A.2d 1010, 1022-23 (Pa. Super. 2002)

(*en banc*) (some citations omitted).

The malice required for felony-murder is not a specific intent to kill. It is only the wanton disregard for the fact that death might result which is inherent in the commission of a dangerous felony. The felony-murder rule thus holds one responsible for the consequences resulting from the malice which accompanies the perpetration of the initial felony.

***Commonwealth v. Olds***, 469 A.2d 1072, 1076-77 (Pa. Super. 1983)

(citations omitted).

In his post-sentence motion, Appellant averred that application of the felony-murder rule violates the Pennsylvania and United States constitutions, and constitutes cruel and unusual punishment. Post-Sentence Motion, 3/6/2019, at 2. According to Appellant, he has been subjected to "the sting of a murder conviction under an arcane and irrational law which does not require proof of intent or malice to be convicted of second[-]degree murder and to be sentenced to life in prison without parole." Post-Sentence Motion Brief in Support, 5/30/2019, at 9. In essence, Appellant challenges the propriety of "the second-degree murder statute [permitting] the use of transferred intent from a felony" to create what he contends is an irrebuttable presumption of "the necessary *mens rea* for murder." Appellant's Brief at 16. Given this presumption, Appellant argues that the

J-A13043-20

felony-murder rule overrides the presumption of innocence and invades the jury's fact-finding role. *Id.* at 19-20. Specifically, he contends the

> jury was not required to make an affirmative finding of [Appellant's] culpability. Instead, the jury was allowed only to deliberate on whether a killing occurred during the commission of a felony. Upon its finding of that fact, the rule requires the jury to find automatically that [Appellant] had a culpable homicidal state of mind.

*Id.* at 20.

Finally, Appellant argues that punishment for second-degree murder constitutes cruel and unusual punishment because under the felony-murder rule, "no regard is given to the culpability or the mental state of a defendant who causes the death of another person[,]" *id.* at 22, and thus the rule "dictates a punishment that is without proportionality between the crime and [has] little legitimate deterrent or retributive rationale." *Id.* at 23 (citing, *inter alia*, **Enmund v. Florida**, 458 U.S. 782 (1982) and **Solem v. Helm**, 463 U.S. 277 (1983)). Thus, Appellant argues that the felony-murder rule is invalid, defective, and unconstitutional.[12]

In denying Appellant's post-sentence motion challenging the propriety of the second-degree murder statute, the trial court concluded as follows.

> [Appellant] and his co-conspirators chose to arm themselves with a loaded firearm that was ultimately used in the course of their botched crime. The felony-murder rule anticipates the

---

[12] We do not address the portions of Appellant's argument that do not relate to the constitutionality of second-degree murder, but instead attack the sufficiency of the evidence. **See** Appellant's Brief at 25-26. For reasons discussed *infra*, Appellant has waived any sufficiency claim on appeal.

dangerousness that the conspirators created and holds each accomplice liable for the actions of their poorly chosen cohorts. In doing so, the law seeks to add a greater deterrent to engaging in particularly dangerous felonies. **See Legg**[]. Thus, the verdict of murder of the second degree does not clearly, palpably, and plainly violate the constitution. [Appellant] fails to overcome his high burden.

Trial Court Opinion, 6/21/2019, at 7.

This Court addressed nearly identical claims to Appellant's in **Middleton**: "(1) [whether] the imposition of a sentence of life imprisonment on an accomplice to a felony-murder violates the Eighth Amendment prohibition against cruel and unusual punishment; and (2) [whether] the Commonwealth's ability to establish the requisite state of mind by implication violates due process of law."  467 A.2d at 843.  Although we concluded that Middleton waived his due process argument by failing to include it in his post-sentence motion, we noted that "[e]ven if we were to decide this issue on its merits, past precedents would mandate a result adverse to [Middleton]."  **Id.** at 845 n.3 (noting that in **Commonwealth v. Cornish**, 370 A.2d 291 (Pa. 1977); **Commonwealth v. Yuknavich**, 295 A.2d 290 (Pa. 1972); and **Commonwealth ex rel. Smith v. Myers**, 261 A.2d 550 (Pa. 1970),[13] our Supreme Court "upheld the constitutional validity

---

[13] In **Smith**, our Supreme Court casts some real doubt on the felony-murder rule and "how shaky are the basic premises on which it rests."  261 A.2d at 555.  Despite the Court's harsh criticism of the felony-murder rule in **Smith**, that doubt has not been expanded since **Smith** was decided in 1970.

- 27 -

of the felony-murder statute"). The same precedents continue to apply here, mandating a result adverse to Appellant.

Regarding Middleton's argument that the second-degree murder statute constituted cruel and unusual punishment, we provided the following analysis.

> [Middleton] argues that the mandatory life sentence required by 18 Pa.C.S.[] § 1102(b) is unconstitutional because it does not allow the sentencing judge to consider any mitigating factors which might alleviate the sentence; factors such as the defendant's level of participation in the killing and his intent. [Middleton] seeks to buttress this argument by drawing an analogy to the recent decision of the United States Supreme Court in **Enmund v. Florida**[] and to the Sentencing Code, 42 Pa.C.S.[] § 9701, *et seq.;* both of which require consideration of mitigating and aggravating factors prior to the imposition of the death penalty.
>
> [Middleton's] argument was specifically addressed, and rejected, in [] **Cornish***,* [] 370 A.2d at 293, in which the court stated: "It can hardly be said that the circumstances wherein a murder is committed during the commission of a felony vary to such an extent that the legislative determination to mandate one penalty is unreasonable."
>
> Furthermore, the selection of the penalty of life imprisonment, being a legislative determination, carries a strong presumption of validity, and of constitutionality. …
>
> [Middleton's] argument does not meet this heavy burden. Both the analogy to **Enmund***,* and the analogy to the Sentencing Code [] suffer from the same defect. Both are concerned with the constitutional limitations on the imposition of the death penalty. [Middleton] would have us overlook the inherent quality of the death penalty which distinguishes it from all other forms of punishment. …

***

- 28 -

> As a result [] decisions in capital cases are of limited assistance in deciding the constitutionality of the punishment in a noncapital case.
>
> ***
>
> The offense of felony-murder is undoubtedly one of the gravest and most serious [offenses] which can be committed. The taking of a life during the commission of an enumerated felony demonstrates a disregard for the property, safety, sanctity, integrity, and especially, the life of the victim. It is a crime of archviolence. Clearly, such an offense merits a severe penalty.

*Middleton*, 467 A.2d at 846-47 (footnote and some internal quotation marks and citations omitted). We applied the *Solem* factors to determine whether the sentence was unconstitutionally disproportionate, ultimately concluding that it "does not derogate from the propriety of a sentence of life imprisonment for the offense of second[-]degree murder." *Middleton*, 467 A.2d at 847.

Instantly, Appellant has not met his burden and has "give[n] us no reason to revisit this precedent[.]" *Commonwealth v. Henkel*, 938 A.2d 433, 447 (Pa. Super. 2007) (rejecting identical claim based upon *Middleton*). In light of the above, Appellant's arguments do not establish that the felony-murder rule "clearly, palpably, and plainly violates constitutional rights." *Brensinger*, 218 A.3d at 456. Accordingly, Appellant is not entitled to relief on this claim.

### Illegal Sentence

Finally, we address *sua sponte* the legality of Appellant's sentences for multiple conspiracy counts. *See Commonwealth v. Barnes*, 871 A.2d

812, 821 n.6 (Pa. Super. 2005) ("Challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court.") (citation and quotation marks omitted).

"If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). Thus, for Appellant "to be convicted of three counts of conspiracy, there must be separate agreements, or separate conspiratorial relationships, to support each conviction." **Barnes**, 871 A.2d at 820.

> In determining whether a single or multiple conspiracy has been established, we consider several relevant factors.
>
> > The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue ... are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

**Commonwealth v. Davis**, 704 A.2d 650, 654 (Pa. Super. 1997) (citation omitted).

In **Davis**, this Court concluded that the crimes committed by Davis and his co-conspirators, specifically robbery and third-degree murder, were the result of a "continuous conspiratorial relationship." 704 A.2d at 654 (quoting 18 Pa.C.S. § 903(c)).

[t]he same acts were done to accomplish both results, the same actors took part, the acts occurred simultaneously at the same location, the same method was employed and the same objective was pursued. We find that these facts constitute the very circumstances envisioned by [subsection] 903(c). The essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.

We conclude therefore that [Davis] cannot be punished separately for each conspiracy; multiple sentences under these circumstances are explicitly precluded by statute. 18 Pa.C.S.[] § 903(c).

704 A.2d at 654-55 (footnote, quotation marks, and some citations omitted).

Similarly, in **Barnes**, the defendant was convicted of multiple conspiracies: delivery of a controlled substance, robbery, and third-degree murder. Upon review of the above factors, this Court concluded that only one conspiratorial agreement existed, and therefore Barnes could "be convicted only of conspiracy to deliver cocaine, that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." 871 A.2d at 821. Based thereon, we vacated Barnes's other two conspiracy convictions.

Applying the above factors to the instant case, we conclude that the conduct of Appellant and his co-defendants did not result from three separate conspiracies. Instead, their conduct was the result of a "continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). The agreement among Appellant and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at

gunpoint (robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), Appellant only could be found guilty of conspiracy to commit robbery, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." **Barnes**, 871 A.2d at 821. Accordingly, we vacate Appellant's conspiracy to commit burglary and conspiracy to commit second-degree murder convictions. **Id.** at 821 n.6. However, because the trial court imposed concurrent sentences for these convictions, we have not upset the overall sentencing scheme and need not remand for resentencing. **Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006).

Convictions and sentences for conspiracy to commit burglary and conspiracy to commit second-degree murder vacated. Judgment of sentence affirmed in all other respects.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/25/20</u>