J-S22031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.G. | : | |
| | : | |
| Appellant | : | No. 258 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001437-2018

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:           **FILED: AUGUST 9, 2021**

T.G.[1] appeals from the judgment of sentence[2] imposed in the Court of

Common Pleas of Lebanon County (trial court) after his jury conviction of rape

of a child, criminal attempt/rape, involuntary deviate sexual intercourse

(IDSI) with a child, aggravated indecent assault of a child, intimidation,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Initials are used to denote the names of most of the individuals throughout this Memorandum to protect the identity of the minor child involved. **See** Superior Court I.O.P. 424(A).

[2] T.G.'s notice of appeal states that the appeal is from the order denying his post-sentence motion. However, in a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted), *appeal denied*, 800 A.2d 932 (Pa. 2002). We have amended the caption accordingly.

intentional obstruction with child abuse report or investigation, indecent assault-person less than thirteen years of age, corruption of minors, endangering welfare of children and indecent exposure.[3] We affirm.

**I.**

This case arises from T.G.'s September 6, 2018 arrest for the sexual assault of J.P. at the daycare run by his wife, C.G, in their home. A two-day trial commenced in this matter on February 24, 2020,[4] and the following facts were adduced.

**A.**

On Sunday, June 10, 2018, J.P. called 911, crying and scared, to report that T.G. had raped her and had been sexually abusing her for a long time, with the last time being on June 8, 2018, the last day she and her siblings were at his home. (*See* N.T. Trial, 2/24-25/20, at 44, 121-22). A tape of the 911 call was played for the jury. (*See id.* at 12). J.P.'s mother testified that she learned about the abuse that day when speaking with the 911 dispatcher. (*See id.* at 44). Police immediately were dispatched to J.P.'s home, conducted a minimal facts interview with J.P., and sent her and her mother to Harrisburg

---

[3] 18 Pa.C.S. §§ 3121(c), 901(a), 3123(b), 3125(b), 4958(a)(1), 3126(a)(7), 6301(a)(1)(ii), 4304(a)(1), 3127(a).

[4] This case had two trials, the first of which resulted in a hung jury.

Hospital, where J.P. underwent an examination by a S.A.F.E.[5] nurse, Ellen M. Dyer, CRNP. (*See id.* at 45-46, 58, 64). Nurse Dyer testified that although the physical examination results were normal, that does not mean the abuse never happened because, in her experience, less than five percent of sexually abused children exhibit any physical changes. (*See id.* at 108-09).

J.P. testified that T.G. and his wife babysat her and her siblings every week, and that starting when she was ten to eleven years old, T.G. would sexually abuse her early in the morning or during the afternoon when the younger children were napping. (*See id.* at 9, 11, 13). She described him removing her pants/underwear and using his hands to touch her breasts, genitals and buttocks. (*See id.* at 13-14). On multiple occasions, he put his penis, tongue and/or fingers inside her vagina. (*See id.* at 15-18). She was afraid to tell anyone because T.G. told her not to or she could get into trouble. (*See id.* at 19). Despite her fear, she finally called 911 because she was afraid of getting pregnant. (*See id.* at 11, 19).

J.P. and her siblings did not return to T.G.'s home on Monday, June 11, 2018, for their scheduled day of daycare, as their mother immediately quit her job so she could stay home with them. After the children failed to appear,

---

[5] Sexual Assault Forensic Examination.

T.G. and his wife terminated daycare services for them. (***See id.*** at 45, 50-51, 121, 124).

Children and Youth Services (CYS) began their investigation that week. As part of the investigation, J.P. was sent to the Children's Resource Center (CRC) for a forensic interview conducted by Violet Witter, at which she asked J.P. "open-ended, non-leading, non-suggestive questions." (***Id.*** at 83). The Commonwealth entered a transcript of the interview and Ms. Witter's report as exhibits. (***See id.*** at 85-86).

On June 15, 2018, CYS child abuse investigator and caseworker Angelica Farissi went to T.G.'s home as part of the investigation. (***Id.*** at 64). T.G. was out of the home and came back at some point in the afternoon. He stated that he was like a grandfather to J.P. and her siblings, and that he and his wife had terminated daycare services for J.P. and her siblings on Monday, June 11, 2018, due to lack of payment. (***See id.*** at 66, 69). After realizing that Ms. Farissi was a child abuse investigator, he said that if there had been any complaints, it was that family. (***See id.*** at 68).

On June 21, 2018, Detective David Lauver of the North Lebanon Township Police Department and Ms. Farissi interviewed T.G. and C.G. at CYS and testified they noted contradictions in his statement. (***See id.*** at 69-70, 125). Specifically, although T.G. initially said that he had no physical contact with J.P. and her siblings and barely interacted with them at all, he eventually stated that he loved them and they are like grandkids to him. (***See id.*** at 70,

4

125). He said he would hug the children and J.P. watched movies in his bedroom. (**See id.** at 125-26). At the interview, T.G. said the abuse report was J.P. and her family's attempt to retaliate against him and his wife because they had terminated daycare services, although services were terminated the week after the June 10, 2018 911 phone call. (**See id.** at 69, 126). He accused J.P.'s father of being the actual perpetrator. Ms. Farissi testified that although T.G. said he had sleep apnea, he did not appear tired at either of her meetings with him. (**See id.** at 67, 70).

T.G. testified on his own behalf and denied sexually assaulting J.P. (**See id.** at 200-01). He stated for the first time that due to medication, he did not interact much with the children, slept most of the day and is unable to maintain an erection. (**See id.** at 197-99). C.G. corroborated T.G.'s testimony that the medication made him tired and rendered him unable to have sex. (**See id.** at 145-46). She testified that care for J.P. and her siblings was terminated due to a series of non-payments and no-shows and would have been effective June 8, 2018, although she did not tell them that. (**See id.** at 158, 160). T.G.'s adult daughter and son testified that his medication affected his sleeping habits, rendering him sleepy during the day due to being awake at night. (**See id.** at 172, 179).

**B.**

At the conclusion of trial, the jury convicted T.G. of all counts. On August 19, 2020, the trial court sentenced him to an aggregate term of not

less than six nor more than twenty years' incarceration plus $8,728.97 in restitution, payable to the Crime Victim's Compensation Board for payments made to J.P. and her family to reimburse them for costs associated with this matter. T.G.'s August 28, 2020 post-sentence motions were denied[6] and he timely appealed. He and the court have complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

On appeal, T.G. challenges the weight and sufficiency of the evidence and the court's restitution order. (*See* T.G.'s Brief, at 4). He argues that the verdict was against the sufficiency and weight of the evidence where J.P. was the only person who testified to first-hand knowledge of the criminal acts, and the restitution award was excessive where the record reflects that he is unable to pay.[7] (*See id.* 11-12).

---

[6] The 120-day period for a decision on T.G.'s post-sentence motion expired on Monday, December 28, 2020. *See* Pa.R.Crim.P. 720(B)(3)(a). However, the clerk of courts failed to enter an order deeming the motion denied on that date. *See* Pa.R.Crim.P. 720(B)(3)(c). Instead, the trial court ruled on the motion on February 12, 2021, outside the 120-day period, and T.G. appealed within thirty days of that order. *See* Pa.R.Crim.P. 720(A)(2)(b). Ordinarily, the appeal would be untimely. However, we decline to quash where the untimeliness was caused by a breakdown of the court. *See Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007) (court breakdown occurs where clerk fails to enter order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c)).

[7] The argument section of T.G.'s brief is woefully inadequate. He fails to divide it into the three questions to be argued with a distinctive heading identifying
*(Footnote Continued Next Page)*

6

**A.**

In his first argument, T.G. challenges the sufficiency of the evidence to support his conviction.[8]  (***See*** T.G.'s Brief, at 10-12).  The Commonwealth posits that this argument is waived because the Rule 1925(b) statement failed to identify which element of the multiple crimes charged the Commonwealth failed to prove.  (***See*** Commonwealth's Brief, at 8, 12).  As the Commonwealth observes, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence

---

"the particular point to be treated therein" and, although he provides footnotes with presumably pertinent caselaw, he does not include any real discussion thereof.   ***See*** Pa.R.A.P. 2119(a); ***see id.*** at 2101, 2119(b); (T.G.'s Brief, at 10-13).

[8] Our standard of review is well-settled.

> When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense[ ] were established beyond a reasonable doubt.

***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citation omitted).  "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence."  ***Id.*** (citation omitted).  The trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.  ***Id.*** (citation omitted).

was insufficient." ***Commonwealth v. Rivera***, 238 A.3d 482, 496 (Pa. Super. 2020). Failure of an appellant to do so results in waiver of the issue. ***See id.*** Here, T.G.'s Rule 1925(b) statement vaguely alleges that the verdict was against the weight and sufficiency of the evidence for the Commonwealth's failure to present evidence of his alleged acts, other than the victim's testimony. (***See*** Rule 1925(b) Statement, at 1-2). This fails to identify which element or elements the Commonwealth failed to prove of the nine crimes with which he was convicted.

Similarly, T.G.'s brief suffers from the same deficiency where the argument section does not set forth or dispute any specific elements of the numerous crimes T.G. was convicted of, nor does it argue which particular elements were not met. Instead, T.G. argues the evidence was insufficient to support his conviction because the Commonwealth did not present any DNA evidence or corroborating testimony to support the victim's claims, which failed to provide specific dates or times for the sexual assault. (***See id.*** at 10-11). Therefore, he has waived this claim. ***Rivera***, ***supra*** at 496. Moreover, it would not merit relief.

It is beyond dispute that "[t]he uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." ***Castelhun***, ***supra*** at 1232 (citations omitted). This remains true even where the defendant presents countervailing evidence, so long as the finder of fact believes the testimony of a sexual assault victim. ***See Commonwealth v.***

***Davis***, 650 A.2d 452, 455 (Pa. Super. 1994), *aff'd on other grounds*, 674 A.2d 214 (Pa. 1996). "[N]o medical testimony is needed to corroborate a victim's testimony if the testimony was rendered credible by the jury." ***Commonwealth v. Poindexter***, 646 A.2d 1211, 1214 (Pa. Super. 1994).

Although T.G. fails to identify exactly which of the nine crimes he is challenging, they all arise out of the same basic set of facts, his sexual assault of J.P. when she was under thirteen years old and he was over eighteen. J.P. consistently testified T.G. began sexually abusing her when she was ten to eleven years old and she was at his home for babysitting. She described T.G.'s sexual assaults in detail, stating that they occurred early in the morning or during the afternoon when the younger children were napping. She described him removing her pants/underwear on multiple occasions and touching her breasts, genitals and buttocks and putting his penis, tongue and/or fingers inside her vagina. J.P. stated that she did not tell anyone because T.G. told her not to or she could get into trouble, and she only finally called 911 when she was afraid of getting pregnant.

Ms. Farissi and Detective Lauver testified about J.P.'s statements during their investigations, which mirrored her trial testimony. The jury watched the forensic interview in which J.P. detailed the abuse and they heard the 911 call initially made by J.P. to the police. J.P.'s story remained consistent throughout trial and in interviews with the police, CYS and the Children's Resource Center.

9

Hence, the Commonwealth presented sufficient evidence to prove the sexual abuse claims against T.G. **See Castelhun**, 889 A.2d 1228, 1232.

**B.**

T.G. abandons the weight of the evidence issue in the argument section of his brief. (**See** T.G.'s Brief, at 10-13). However, even if interpreted as a weight of the evidence challenge,[9] his claim would lack merit.

A jury is free to believe all, part or none of the evidence when passing on the credibility of the witnesses and the weight of the evidence. **See Commonwealth v. Whitacre**, 878 A.2d 96, 99 (Pa. Super. 2005), *appeal denied*, 892 A.2d 823 (Pa. 2005); **see also Castelhun**, **supra** at 1232. A claim challenging the weight of the evidence posits that a jury's verdict is so contrary to the evidence as to shock one's sense of justice. **See Commonwealth v. Bellini**, 482 A.2d 997, 999 (Pa. Super. 1984). A trial court's determination that the verdict was not against the weight of the

---

[9] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013) (citation omitted).

evidence is "[o]ne of the least assailable reasons for granting a new trial." *Clay*, *supra* at 1054-55 (citation omitted).

As stated above, the evidence was sufficient for the Commonwealth to prove the charges against T.G. J.P. testified with specificity about the sexual abuse and the jury heard testimony from other witnesses who corroborated that her story had remained consistent throughout the investigation and litigation. Her mother testified to J.P.'s changed demeanor during the relevant time, the jury saw a video of her statement and heard her 911 call. It also heard from T.G. and his witnesses about his medical condition and his version of events.

The jury was free to believe all, some or none of this evidence, weigh it and make credibility determinations, and its resulting verdict does not shock our sense of justice. *See Whitacre*, *supra* at 99; *Bellini*, *supra* at 999. Hence, the trial court did not abuse its discretion in denying T.G.'s motion for a new trial. *See Clay*, *supra* at 1054-55. This issue would lack merit.

**C.**

Finally, T.G. argues that the trial court's order directing him to pay $8,728.97 in restitution to the Crimes Victims Compensation Board is not supported by the record.[10] (*See* T.G.'s Brief, at 12). He argues that "the

---

[10] "An appeal from an order of restitution based upon a claim that a restitution is unsupported by the record challenges the legality, rather than the
*(Footnote Continued Next Page)*

record clearly states that he has not worked in years and has no foreseeable opportunity of gainful employment[.]" (**Id.**).

Section 1106 of the Crimes Code provides, in relevant part that:

(1) The court **shall** order full restitution:

    (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund ….

18 Pa.C.S. § 1106(c)(1)(i) (emphasis added).

Based on this clear language, the trial court was required to order T.G. to pay the Crime Victim's Compensation Board the total costs incurred "to provide [J.P.] with the fullest compensation for [her] loss … [r]egardless of [his] current financial resources." **Id.**

Claims filed with the court reflect that the Crime Victim's Compensation Board paid J.P.'s family a total of $8,728.97 in compensation for various costs incurred because of the sexual assault, including those associated with Pinnacle Health Systems and J.P.'s medical exam and forensic interview.

---

discretionary aspects, of sentencing. When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law." **Commonwealth v. McKee**, 38 A.3d 879, 881 (Pa. Super. 2012) (citations and internal quotation marks omitted).

Defense counsel was provided with copies. Hence, the court did not commit an error of law where it was statutorily mandated to order T.G. to pay $8,728.97 in restitution to the Crime Victim's Compensation Board for any financial loss incurred by J.P. and her family resulting from T.G.'s criminal actions. *See McKee*, *supra* at 881. This issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/09/2021