J-A09032-21

2021 PA Super 108

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                      :  PENNSYLVANIA
                                       :
                v.                    :
                                       :
ANGELO WEEDEN                  :
                                       :
          Appellant         :  No. 582 WDA 2020

Appeal from the Judgment of Sentence Entered February 24, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000513-2019

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:               **FILED: MAY 26, 2021**

     Angelo Weeden (Weeden) appeals from the judgment of sentence imposed following his jury conviction in the Court of Common Pleas of Allegheny County (trial court) of one count each of aggravated assault, person not to possess a firearm, carrying a firearm without a license, propulsion of missiles into an occupied vehicle and three counts of recklessly endangering another person.[1]  We affirm.

**I.**

     This case arises from Weeden's assault on his former girlfriend, Alyssa Houston (Houston), with whom he had a six-year relationship that ended in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 6105(a)(1), 6106(a)(1), 2707(a) and 2705.

October 2018.  At the time of the incident, Houston was living with her friend, Heather Lamb (Lamb), who had an eight-year-old daughter (Child).  We recount the relevant factual and procedural background below.

**A.**

At Weeden's December 2019 jury trial, Houston testified that she and Weeden remained friends after they ended their romantic relationship. However, Houston ended the friendship on the afternoon of December 15, 2018, because of Weeden's intrusiveness into her life and her new romantic relationship.  Later that day, at about 5:30 p.m., Houston, Lamb and Child left Lamb's house and got into Lamb's vehicle to go shopping.  Houston noticed Weeden's Volkswagen Jetta parked nearby and Weeden began to drive directly behind them down a narrow street.  When Lamb left the main road to enter a residential area, Weeden pulled up around the drivers' side of her car and blocked it, preventing her from moving forward.

Weeden exited his vehicle and approached the passenger side of Lamb's car where Houston was sitting.  Houston locked her car door and Weeden aggressively attempted to pull it open.  Lamb quickly put her car in reverse and backed around Weeden's vehicle.  As Lamb drove away, Houston heard four gunshots, two of which struck their vehicle on the rear passenger side. They drove to the police station and reported the incident.

On cross-examination, Houston testified that Weeden supported her financially during their relationship, that she was unemployed in December

2018 and that her mother, boyfriend and Lamb were assisting her financially at that time. She further testified:

Q.: Is it true you were selling drugs at that point in time?

A.: No.

[The Commonwealth]: Objection. Improper character evidence.

The Court: Sustained.

\* \* \*

Q. During the course of your relationship with Mr. Weeden had you ever threatened to kill him?

A. No.

Q. Never during a fight or hostile interaction, you never made a threat to him?

A. No.

(*Id.* at 49-50, 53).

Lamb testified consistently with Houston as to the details of the incident, including that she heard multiple gunshots as she drove away. Lamb additionally recounted that her daughter screamed "Gun!" as Weeden attempted to pry open Houston's passenger side door. (*Id.* at 67).

**B.**

City of Pittsburgh Police Department Detective Richard Baumgart testified regarding the department's use of a gun detection program called ShotSpotter technology in its investigations. Detective Baumgart explained that this program uses scientific algorithms and sensors to pinpoint the

location of possible gunshots. The system detects gunfire within a 30-foot radius and automatically generates a report that gives the date, time and location of the shots. Once the report is generated, trained operators immediately listen to the audio recordings to verify the report before sending it to the police department. Police officers are typically dispatched to the area very quickly after a gunshot is detected, within one to two minutes. All officers in the department, including Baumgart who trained colleagues, are taught to understand how the ShotSpotter system operates and how to use it as a resource when shots are fired. The operators and police have also been trained to differentiate between the sound of gunshots and other similarly loud sounds, such as a firecracker pattern.

The Commonwealth marked the ShotSpotter report generated in the instant case, titled "ShotSpotter Investigative Lead Summary" as Exhibit 4. (*See id.* at 104-05). This document was generated by the ShotSpotter computer system and was not amended by any individual.

On cross-examination, Detective Baumgart testified that he had not been certified by ShotSpotter nor did he prepare the report in this case. He further testified:

> Q: You stated that ShotSpotter data is sent to ShotSpotter for human review, is that accurate?
>
> A: Yes.
>
> Q: And you're not the person who does that human review, correct?

A: I am not.

Q: And at no point in time have you ever done that?

A: No.

Q: Do you know who did with respect to this particular data compilation?

A: I do not know.

Q: Do you know what the role of a ShotSpotter forensic engineer is?

A: Yes.

Q: Okay. What do they do?

A: A forensic engineer would— they would look into all the science and algorithms that go into the shot detection of a particular incident.

Q: You're not trained as a ShotSpotter forensic engineer?

A: I am not, no.

Q: Do you know whether a ShotSpotter forensic engineer ever reviewed this particular report?

A: I do not know.

\* \* \*

Q: Do you know whether this dataset was reviewed by an incident reviewer?

A: I would believe so. Everything that comes back to us as being gunshots has been reviewed by a human reviewer.

Q: But you don't know for a fact as you sit here today that actually occurred at any point, correct?

A: I don't know for a fact. But through our training, every incident that goes to— that is determined to be a gunshot, is reviewed by a human upon human review on ShotSpotter.

Q: But I'm interested in this specific dataset. You don't know for a fact that this was ever reviewed by an incident reviewer?

A: I do not know. I don't know.

Q: And you can't tell me who the incident reviewer would have been, correct? Because you don't know if it was ever reviewed.

A: I do not know.

(*Id.* at 106-08).

The trial court admitted the ShotSpotter report over objection by defense counsel on grounds of hearsay and Confrontation Clause errors on re-direct examination. Detective Baumgart testified to the substance of the report, specifically, that two shots were detected by the ShotSpotter system on December 15, 2018, at 7:43 p.m. in the area of 3400 Shadeland Avenue. The detective opined that although the system was not 100 percent precise in detecting the presence of gunfire, it was, in his experience, "very accurate." (*Id.* at 118).

Police Officer Jacob Botzenhart testified that officers were sent to investigate a ShotSpotter report that shots had been fired at 7:43 p.m. and that Lamb and Houston arrived at the police station to report the incident at 7:45 p.m. He described the women's demeanors as "visibly shaken up and afraid." (*Id.* at 123).

**C.**

Counsel for Weeden called four witnesses to testify of his behalf, including his long-time friends Kathy Horne Williams (Horne) and Lynn Williams (Williams). These witnesses testified that Houston relied on Weeden for financial support during their relationship and that he cut her off financially when their relationship deteriorated.

Prior to their testimony, defense counsel proffered that Horne would also testify that "she heard Houston make threats to [Weeden] on various occasions." (*Id*. at 161). Although counsel argued that this testimony would be used to challenge the credibility of Houston's earlier testimony to the contrary and not for the truth of the matter asserted, the court disallowed it as hearsay.

The remaining two defense witnesses, Weeden's girlfriend Carolyn Williams and her son Marquis Williams provided an alibi for Weeden. They testified that Weeden arrived at their residence at approximately 5:00 p.m. on the night of the shooting, that they ate dinner together and played video games for several hours, and that Weeden did not leave their house until the next morning.

**D.**

The jury found Weeden guilty of the above-listed offenses and the trial court sentenced him to an aggregate term of not less than ten nor more than

twenty years' incarceration. Weeden timely appealed[2] and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b). On appeal, Weeden's contentions center on evidentiary errors that he argues that the trial court made in admitting and excluding certain evidence.

## II.

Weeden first challenges the trial court's admission of the ShotSpotter report (Commonwealth's Exhibit 4) for two reasons.[3] First, he claims that the report constitutes unreliable, inadmissible hearsay evidence. Second, Weeden maintains that admission of the report was a Confrontation Clause violation.[4]

## A.

Weeden first claims the trial court erred in admitting the ShotSpotter report because it was hearsay offered to support the Commonwealth's position that gunshots were fired at a specific time and location. He further maintains

---

[2] The filing deadline was extended due to the COVID-19 pandemic.

[3] We address the issues concerning the report as framed by the parties and do not decide if it may have been subject to other evidentiary objections.

[4] An appellate court's standard of review of a trial court's evidentiary rulings, including decisions on the admission of hearsay, is an abuse of discretion. *See Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. Super. 2020). Whether a defendant has been denied his right to confront a witness under the Confrontation Clause is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *See id.*

that the report fails to meet the business records exception to the hearsay rule.[5]

Hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence "to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). The Pennsylvania Rules of Evidence define the term "statement" as "**a person's** oral [or] written assertion, or nonverbal conduct, if the **person** intended it as an assertion." Pa.R.E. 801(a) (emphasis added). Generally, hearsay is not admissible because it lacks guarantees of trustworthiness, as the declarant cannot be challenged regarding the accuracy of the statement. *See Commonwealth v. Kuder*, 62 A.3d 1038, 1055 (Pa. Super. 2013), *appeal denied*, 114 A.3d 416 (Pa. 2015).

In *Commonwealth v. Wallace*, 244 A.3d 1261 (Pa. Super. 2021), this Court considered whether data recovered from a Global Positioning System (GPS) monitoring device constituted hearsay. We held that GPS records are not hearsay, reasoning: "the Pennsylvania Rules of Evidence expressly define a 'statement' for purposes of hearsay as the written or oral assertion of **a person**." *Id.* at 1272 (quoting Pa.R.E. 801) (emphasis original). Ascribing the plain and ordinary meaning to the words in the Rule, we concluded that

---

[5] *See* Pa.R.E. 803(6) (providing exception to general rule against hearsay where a record is made in the course of a regularly conducted business activity).

GPS data automatically generated by a computer does not constitute a statement asserted by a person and, therefore, cannot qualify as hearsay. *See id.* Because of this conclusion, we expressly declined to address whether the records fell within an exception to the general exclusionary rule against hearsay. *See id.* at n.7.

Similarly, the ShotSpotter report here was automatically generated by the ShotSpotter system and was not an assertion made by a person. (*See* Commonwealth's Exhibit 4, at 3 (Disclaimer stating "Lead Summary is produced using data automatically generated by the ShotSpotter system.")). Although the report was subject to human review, the document in this case was not amended by anyone. Like the GPS data in *Wallace*, the ShotSpotter document is not hearsay.[6]

**B.**

Weeden next challenges the trial court's admission of the ShotSpotter report on Confrontation Clause grounds. Weeden contends that this document was testimonial in nature because it was offered to prove the precise time and location of the gunshots, and that he should have been afforded the opportunity to cross-examine the declarant of the document. Weeden

---

[6] Because it is not hearsay, we need not consider whether it falls under the business records exception.

maintains that Detective Baumgart's testimony was lacking in this regard because he had no role in creating the report.

The Sixth Amendment to the United States Constitution provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause protects a criminal defendant's right to confront witnesses testifying against him. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Pennsylvania Constitution provides the same protection as the United States Constitution. *See* Pa. Const. Article I, § 9. Testimonial statements of a witness absent from trial can be admitted "only where **the declarant** is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, *supra* at 59 (emphasis added). However, the Confrontation Clause right does not apply to ShotSpotter reports for several reasons.

First, it is not possible to cross-examine the declarant of the ShotSpotter report because it was automatically generated by a computer system and was not prepared by a person. The disclaimer to the report specifically advises that it "has not been independently reviewed by our Forensic Engineers" and that the data provided should be corroborated with other evidentiary sources such as witness statements. (Commonwealth's Exhibit 4, at 3, Disclaimer). The report was not altered or amended by any person and no one individual can be considered its author.

Second, a statement is covered by the Confrontation Clause only if it is testimonial in nature. *See Commonwealth v. Cheng Jie Lu*, 223 A.3d 260, 264-65 (Pa. Super. 2019). "Statements to police are testimonial and thus subject to Confrontation Clause restraints when their primary purpose is to establish or prove past events for purposes of proof at a criminal trial." *Commonwealth v. Brown*, 185 A.3d 316, 325 (Pa. 2018) (citation omitted). Generally, statements are nontestimonial when made under circumstances objectively indicating that the primary purpose of the statement is to enable police to meet an ongoing emergency. *See id.* In contrast, statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the document is to establish or prove past events potentially relevant to later criminal prosecution. *See id.*

In this case, the primary purpose for production of the ShotSpotter report was **not** to establish or prove past events relevant to a later criminal prosecution. Instead, the computer-generated report was sent to the police department within one to two minutes of the ShotSpotter system's detection of gunshots. It was provided during the unfolding of an ongoing emergency or what was likely an emergency situation. The report of gunfire signaled an immediate crisis involving potential serious injury. It was, therefore, not testimonial in nature and does not raise Confrontation Clause concerns.

**III.**

Weeden next argues the trial court erred in excluding as hearsay the proffered testimony of Horne regarding threats Houston allegedly made to Weeden during their relationship.[7]  Weeden maintains this testimony was not hearsay because it was not offered for its truth, but rather to challenge Houston's credibility where she testified on cross-examination that she never threatened to kill him.  He contends that testimony undermining Houston's credibility was critical to this case, given the dearth of evidence linking him to the shooting.

As discussed above, hearsay is a statement, other than one made by the declarant while testifying at the relevant proceeding, offered to prove the truth of the matter asserted.  **See** Pa.R.E. 801(c).  "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement."  **Commonwealth v. Busanet**, 54 A.3d 35, 68 (Pa. 2012) (citation omitted).

Here, the testimony concerning alleged threats Houston made to Weeden was proffered to contradict her testimony to the contrary and to undermine her credibility.  Because it was not offered for the truth of the

---

[7] In his brief, Weeden states that the defense also sought to elicit this same evidence from Lynn Williams.  However, as Williams was not specifically referenced in the sidebar discussion, we frame this issue as relating to Horne only.  (**See** Trial Court Opinion, 8/13/20, at 10 n.2).

matter asserted, *i.e.*, that Houston actually made these threats, it was not hearsay.

This finding does not end our inquiry, however, as we must consider the Commonwealth's position that any error the trial court made in this regard was harmless. An appellate court will find harmless error where:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*;

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Brown**, **supra** at 330 (citation omitted). The Commonwealth has the burden of establishing harmlessness beyond a reasonable doubt. **See id.**

Here, Lamb and Houston testified consistently with one another regarding the incident and identified Weeden as the perpetrator. Lamb additionally detailed that she heard her daughter scream "Gun!" as Weeden pried at Houston's car door. The women arrived at the police station to report the encounter and damage to the vehicle within minutes of the ShotSpotter system's detection of gunshots in the vicinity. Both Lamb and Houston appeared frightened and unnerved upon their arrival at the police station. Given the strength of the Commonwealth's evidence against Weeden at trial,

any error on the part of the court in disallowing evidence of the vaguely-identified threats Houston allegedly made was harmless.

**IV.**

Finally, Weeden claims the trial court erred in precluding defense counsel from questioning Houston about her alleged involvement in drug activity. Weeden maintains that this testimony was not offered as character evidence, but as an alternative explanation for the shooting.

Character evidence is governed by Pennsylvania Rule of Evidence 404, which provides in pertinent part:

> **Rule 404. Character Evidence; Crimes or Other Acts**
>
> **(a) Character Evidence.**
>
> (1) **Prohibited Uses**. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> (2) **Exceptions for a Defendant or Victim in a Criminal Case**. The following exceptions apply in a criminal case:
>
> (A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
>
> (B) subject to limitations imposed by statute a defendant may offer evidence of an alleged **victim's pertinent trait**, and if the evidence is admitted the prosecutor may:
>
> (i) offer evidence to rebut it; and
>
> (ii) offer evidence of the defendant's same trait;
>
> \* \* \*

Pa.R.E. 404(a)(1),(2)(A), (B), (i)-(ii) (emphasis added).

"Specific instances of a victim's prior conduct are admissible to show a victim's character trait only if the trait in question is probative of an element of a crime or a defense." ***Commonwealth v. Minich***, 4 A.3d 1063, 1071 (Pa. Super. 2010) (citation omitted). Thus, under Rule 404, evidence of the victim's "pertinent trait" is limited in scope and must be relevant to the offense.

In this case, the trial court found that the allegations concerning Houston's drug activity amounted to mere speculation and had no discernable tie to the crime in this case. The court further determined that defense counsel's line of questioning in this regard was an improper attack on Houston's character. After review of the record, we conclude that the court acted within its discretion in ruling on this matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2021

- 16 -