J-S13026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DOMINIC POULSON :
:
Appellant : No. 1784 EDA 2020

Appeal from the Judgment of Sentence Entered July 20, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000203-2018

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                         **FILED JULY 13, 2021**

Appellant, Dominic Poulson, appeals from the judgment of sentence entered on July 20, 2020, as made final by the denial of post-sentence motions on August 17, 2020, following his jury trial convictions for third-degree murder and firearms not to be carried without a license.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  Appellant's convictions "stem[] from the shooting death of Victor Wilson, Jr. outside of an after-hours club in South Coatesville, Chester County, Pennsylvania in the early morning hours of January 30, 2017."  Trial Court Opinion, 1/29/2021, at 2.  A jury convicted Appellant of the aforementioned crimes on March 13, 2020.  On July 20, 2020, the trial court sentenced

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2502(c) and 6106(a)(1), respectively.

Appellant to 20 to 40 years of incarceration for third-degree murder and a consecutive sentence of two to four years of incarceration for Appellant's firearm conviction. Appellant filed a timely post-sentence motion on July 28, 2020. The trial court entered an order denying post-sentence relief on August 17, 2020. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

1. Did the trial court permit prejudicial out[-]of[-]court statements into evidence even though the proponent witnesses were entirely unable to describe the circumstances of the statements or the nature of the declarant?

2. Did the trial court allow the Commonwealth to inflame the passions of the jury by displaying excessively visual depictions of the decedent's body?

_____

[2] On September 2, 2020, Appellant filed a notice of appeal. In that notice of appeal, appointed counsel stated that Appellant wished to appeal, but that another notice of appeal would be forthcoming after the appointment of new counsel. In its Pa.R.A.P. 1925(a) opinion, the trial court states that the notice of appeal did not comply with our appellate rules and so "it directed counsel to file a proper [n]otice of [a]ppeal, which [counsel] did on September 4, 2020[.]" Trial Court Opinion, 1/29/2021, at 1. Upon review of the certified record, there is no trial court order directing counsel to file another notice of appeal and there is no entry on the trial court docket indicating an order was filed. Moreover, there is no second notice of appeal contained within the certified record and no trial court docket entry indicating that such a filing occurred. We conclude, however, that the notice of appeal filed on September 2, 2020 was sufficient. Pennsylvania Rule of Appellate Procedure 904 governs the content of a notice of appeal. "A failure to comply with Pa.R.A.P. 904 will not result in a dismissal of the notice of appeal as long as the notice of appeal is timely filed." *In re McElhatton*, 729 A.2d 163, 165 (Pa. Cmwlth. 1999), *citing* *Commonwealth v. Gumpert*, 512 A.2d 699 (Pa. Super. 1986). The trial court subsequently ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 4, 2021, following the appointment of new counsel and several court-granted extensions of time, Appellant filed a timely Rule 1925(b) statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 29, 2021.

3. Did the trial court err in accepting the emotionally charged and entirely irrelevant testimony of the victim's family regarding their reaction to their loved one's death?

4. Did the trial court commit error when it admitted into evidence a photograph depicting [Appellant's] brother [who was] incarcerated when there was no relevant purpose and its introduction tends to associate [Appellant] with criminality?

Appellant's Brief at 4.

All of Appellant's issues challenge trial court evidentiary rulings. Our Supreme Court has held:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015) (internal citations and quotations omitted).

In his first issue presented, Appellant claims that the trial court abused its discretion by allowing "Commonwealth witnesses[,] Jennifer Hawn-Restick and Brian Garrity" to testify at trial because their testimony was hearsay. *Id.* at 8. Appellant contends that neither witness was present when the victim "was killed; however, both were home and lived close enough [to the crime scene] that they claimed to hear unseen individuals around the time that they also heard gunshots." *Id.* Appellant claims that the trial court erred by permitting the witnesses' testimony under the present sense impression

and/or the excited utterance exceptions to the rule against hearsay, because "both [witnesses] were explicit that they did not see the declarant when the statements were made" and were unable to "describe the mental and physical state of the declarant or the circumstances surrounding the declaration." ***Id.*** at 9.

In this case, Appellant filed a motion *in limine* to preclude the aforementioned witnesses' testimony on the basis of hearsay. Prior to their trial testimony, the trial court heard argument on Appellant's motion. The Commonwealth argued that the statements the witnesses heard qualified under the present sense impression and excited utterances exceptions to hearsay. ***See*** N.T., 3/9/2020, at 3-5. Ultimately, the trial court "provisionally den[ied Appellant's] motion *in limine*[,] subject to [] proper trial objections at the time, if the testimony comes in from either witness." ***Id.*** at 8. However, upon our review, counsel for Appellant did not lodge any specific, contemporaneous objections to the witnesses' testimony during trial. ***See*** N.T., 3/9/2020, at 54-82. As such, the trial court concluded Appellant "has waived his hearsay objection to these witnesses for purposes of appeal." Trial Court Opinion, 1/29/2021, at 5.

We agree. "We have long held that failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (citations, quotations and brackets omitted); ***see also Poplawski***, 130 A.3d at 735 (holding that "a generic, pre-trial motion may not substitute for a

- 4 -

specific, contemporaneous objection never made to a trial court"); **see also** Pa.R.A.P. 2117(c) (where an issue is not reviewable unless raised or preserved below, an appellate brief must set forth specific references to the places in the record where the matter appears to show that the question was timely and properly raised below so as to preserve the issue on appeal). As such, we conclude Appellant waived his first issue on appeal.

Moreover, "[h]earsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." **Commonwealth v. Rivera**, 238 A.3d 482, 492 (Pa. Super. 2020) (internal citation omitted). This Court has stated:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> > (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
> >
> > **When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition.**
> >
> > Comment: ...
> >
> > For this exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory.

(2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

**When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.**

Comment: ...

This exception has a more narrow base than the exception for a present sense impression, because it requires an event or condition that is startling. However, it is broader in scope because an excited utterance (1) need not describe or explain the startling event or condition; it need only relate to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance. In *Commonwealth v. Gore*, 396 A.2d 1302, 1305 (Pa. Super. 1978), the court explained:

The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit ... Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." ... The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Pa.R.E. 803 (emphasis in original).

*Commonwealth v. Rivera*, 238 A.3d 482, 493–494 (Pa. Super. 2020)

(original emphasis omitted; emphasis added). As the comments to Rule 803

make clear, for purposes of applying the exceptions for present sensory impressions and excited utterances, the declarant **need not** be identified, so long as there is independent corroborating evidence that the declarant actually perceived the event or startling condition. Here, both of the proffered Commonwealth witnesses testified that the declarant was involved in an excited argument in the precise location where the shooting occurred, while perceiving and describing the events at issue. Thus, the trial court's determination to allow the testimony at trial was not clearly erroneous or the product of bias, prejudice, or ill-will. Accordingly, although Appellant waived his opening claim by failing to raise a contemporaneous hearsay objection, his first appellate issue is otherwise without merit.

In his second issue presented, Appellant asserts that the trial court erred by allowing the Commonwealth to introduce into evidence multiple inflammatory and unduly prejudicial photographs of the decedent, as well as a three-dimensional crime scene recreation depicting the victim, because:

> [t]he repeated display of [the victim's] body [was] not relevant to any issue of fact. Those constant images of a dead young man would naturally and unavoidably inflame the passions of a jury. It was error for the trial court to permit the Commonwealth to publish multiple depictions of the victim's body through multiple witnesses, and [Appellant] was denied a fair trial by that error.

Appellant's Brief at 11.

Our Supreme Court has stated:

> [An appellate court] review[s] a challenge to the trial court's admission of photographs under the standard of abuse of discretion. When considering the admissibility of photographs of

a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

> First a trial court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

As [our Supreme Court has] repeatedly recognized, photographic images of a homicide victim are often relevant to the intent element of the crime of first-degree murder. Indeed, in some cases, the condition of the victim's body may be the only evidence of the defendant's intent. [Our Supreme Court has] affirmed a trial court's admission of photographs of a murder victim that illustrated the brutality of the beating and sexual assault he [or she] sustained, in order to allow an inference of the defendant's intent to kill. [Our Supreme Court has] stated that the depiction of the victim's deep and gaping injuries was essential as evidence of intent beyond mere infliction of bodily injury. [Our Supreme Court has] made clear[, it] will not sanction a sanitizing of the evidence that deprives the Commonwealth of the opportunity to prove intent to kill beyond a reasonable doubt.

The fact that a medical examiner or other comparable expert witness has conveyed to the jury, in appropriate clinical language, the nature of the victim's injuries and the cause of death does not render photographic evidence merely duplicative. The meaning of words, particularly the clinical words employed by a pathologist, can be properly and usefully illustrated and explained to a lay jury *via* photographic images. In determining the intent of the defendant in a criminal homicide case, the fact-finder must be aided to every extent possible.

Although the possibility of inflaming the passions of the jury is not to be lightly dismissed, a trial judge can minimize this danger with an appropriate instruction, warning the jury members not to be swayed emotionally by the disturbing images, but to view them only for their evidentiary value.

*Commonwealth v. Pruitt*, 951 A.2d 307, 319 (Pa. 2008) (internal citations and quotations omitted).

In this case, the trial court explained:

[T]he photographs and visual evidence of the victim's body show[n] to the jury were not inflammatory. Most of the visuals [we]re taken from a distance and d[id] not depict the extent or severity of the victim's injuries. Although there [was] blood visible on some of the visual [e]xhibits, no damaged or eviscerated bodily organs or [] gruesome conditions [were] depicted such as would shock the sensibilities of a viewer [considering] the nature of the case and the type of crime committed. The visual [e]xhibits of the victim's body, while disturbing, [were] not inflammatory. Further, the [trial c]ourt gave a cautionary instruction to the jury as to how they were to consider the visual depictions of the victim's body in its closing charge before deliberations. A jury is presumed to follow the instructions of the [trial c]ourt.

[Furthermore,] the visual depictions provided at this trial [we]re of such essential evidentiary value that the need for them clearly outweigh[ed] the likelihood of inflaming the minds and passions of the jurors. Each of these photographs and/or visual depictions show the victim's body at a different angle[. I]n the case of the autopsy photos, [the photographs display] the multiple bullet wounds, the location of the victim's injuries, and why those injuries resulted in the victim's death[. The photographs from the crime scene] provide different perspectives of the scene to allow jurors to get a good impression of the distance between the [bar] and the shooting, how long it might have taken the participants to walk to the location of the shooting, and how the shooting physically occurred, *i.e.*, the distance between the parties and the positions of each vis-a-vis the other. [Appellant] was charged with [f]irst[-d]egree [m]urder in connection with the victim's death. He testified on his own behalf and argued that the killing was justifiable self-defense.

* * *

There was no other way to present the details of the crime with sufficient clarity to permit the jury to navigate the factual nuances critical to the question of [Appellant's] guilt than to provide them

with multiple [] vantage points from which they could reconstruct the events that led to the crimes at issue.

Trial Court Opinion, 1/29/2021, at 16-17 (citations omitted).

Upon review of the certified record, including the photographs at issue and the trial court's cautionary instruction, we discern no abuse of discretion in admitting the photographs into evidence. We agree with the trial court that the photographs were not inflammatory. While several photographs, both from the crime scene and subsequent autopsy, show the victim at close angles, they are not overly gruesome or gory. Moreover, while some of the crime scene photographs show the victim laying in a pool of his own blood, the photographs are not so grotesque as to inflame the jury and render it incapable of fairly considering the evidence and facts of the case. Here, the victim was shot multiple times and the position of his body was important to determining whether Appellant acted in self-defense. Finally, even though the photographs were not inflammatory, the trial court issued the following cautionary instruction directing the jury not to allow the photographs to prevent it from carefully and impartially considering all the evidence:

> There were photographs and video footage admitted into evidence for the purpose of showing the nature of the wounds received by the deceased, the conditions at the scene of the alleged crime meant for helping you to understand the testimony of the witnesses who refer to them. Some of the photographs and video footage [were] not pleasant to look at. You should not let this stir up your emotions to the prejudice of [Appellant]. Your verdict must be based on rational and fair consideration of all the evidence and not on passion or prejudice against [Appellant], the Commonwealth, or anyone else connected with this case.

- 10 -

N.T., 3/12/2020, at 85. We presume the jury followed the trial court's instruction. **Commonwealth v. Webb**, 236 A.3d 1170, 1179 (Pa. Super. 2020). As such, there is no merit to Appellant's second claim on appeal.

Next, Appellant asserts that the trial court erred by allowing three members of the victim's family, who were not present to witness the crime, to testify at trial. He claims that the "[d]escriptions of the family's grief was graphic" and "entirely irrelevant." Appellant's Brief at 11. He argues that although the trial court characterized the evidence as life-in-being testimony, it was victim impact testimony which is impermissible during the guilt phase of trial. **Id.**

Our Supreme Court has held:

Testimony that is a personal account describing the devastating impact [a] murder[] had on the surviving families is wholly appropriate and admissible at the sentencing phase of a capital case. **Commonwealth v. Flor**, 998 A.2d 606, 634 (Pa. 2010) (citation omitted).

* * *

In contrast to victim impact testimony, life-in-being testimony is admissible during the guilt phase of a murder trial. Life-in-being testimony is proffered to show that the victim was alive at a time prior to the murder, and thus it is relevant to the first element of murder, *i.e.*, that a human being was unlawfully killed. **See**, **e.g.**, **Commonwealth v. Carson**, 913 A.2d 220, 237 (Pa. 2006) (upholding as proper life-in-being testimony [from] the victim's mother [showing] that the victim was alive and well prior to the date of his murder and that she identified his dead body at the medical examiner's office); **Commonwealth v. Miller**, 746 A.2d 592, 602 (Pa. 2000) (concluding that testimony as to the ages and physical characteristics of two victims, their clothing at the time of disappearance, and the last sightings of the victims "demonstrated that each victim was a life in being and was elicited

for the purpose of placing the disappearances of the victims in the proper time frame and identifying them by clothing and appearance.").

*Commonwealth v. Jordan*, 65 A.3d 318, 332 (Pa. 2013); *see also*

*Commonwealth v. Reed*, 990 A.2d 1158, 1169 (Pa. 2010) (finding no abuse of discretion in allowing the Commonwealth to "utilize[ a family witness' life-in-being] testimony for limited, permissible purposes of establishing background and 'time-frame facts,' [where] there was no effort [by the Commonwealth] to elicit sympathy or emotion through the presentation[]").

Moreover, even if the "admitted testimony was inadmissible at the point in the proceedings at which it was admitted," it is still subject to a harmless error analysis. *Jordan*, 65 A.3d at 333. "An error is harmless when the Commonwealth can establish that the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict." *Id.* (citation omitted).

Upon review of the certified record, we note the following. The victim's father testified about the last time he saw his son and how he learned the victim had been shot. He further testified that he went to the location of the shooting to identify the victim, but was not permitted by police to approach because it was an active crime scene. N.T., 3/9/2020, at 136-138. The testimony of the victim's father related solely to how he learned of the death of his son and the steps he took to identify the victim. The victim's sister and brother-in-law also briefly testified. The victim's brother-in-law testified that

- 12 -

a distraught eyewitness to the murder woke him up to tell him about the shooting. N.T., 3/10/2020, at 95-96. The victim's brother-in-law also testified that he then called other family members to ascertain the victim's status, find out what happened, and ultimately learned the victim was dead. *Id.* at 97-99. The victim's sister testified similarly to her husband. *Id.* at 101-103. Upon review, all of the proffered testimony was brief, matter of fact, devoid of emotion, and related to the specific time-frame of the murder. We reject Appellant's suggestion that the family described their grief in graphic detail. Moreover, there was no effort by the Commonwealth to elicit sympathy or emotion through the presentation of the proffered evidence. Therefore, we find the evidence qualified as life-in-being testimony which was properly admitted during the guilt phase of trial. As such, we discern no abuse of discretion by the trial court and conclude that Appellant's third allegation of error lacks merit.

In his final issue presented on appeal, Appellant claims that the trial court abused its discretion by allowing the Commonwealth to introduce into evidence a photograph which depicted Appellant's brother in prison. Appellant's Brief at 14. The photograph was introduced in connection with a recorded prison conversation between Appellant and his brother, while Appellant's brother was incarcerated. *Id.* Appellant claims that the introduction of the photograph into evidence was an attempt by the Commonwealth to "shroud[ Appellant] in a cloak of criminality" and "akin to the jurors observing a defendant in custody." *Id.* Initially, we note that

Appellant does not cite any authority to support his novel legal theory, and our independent research has not revealed relevant precedent. Instead, Appellant relies upon caselaw which states that a jury cannot view a defendant in custody. Moreover, as the trial court recounted, by the time the photograph at issue was introduced at trial, "the jury knew [Appellant] had a brother, knew [Appellant's] brother was incarcerated in [s]tate [p]rison, and knew that the police had intercepted phone calls between [Appellant] and his brother made during his brother's incarceration." Trial Court Opinion, 1/29/2021, at 29. We agree with the trial court's assessment. Accordingly, we conclude Appellant's final claim is without merit, but would otherwise constitute harmless error. Hence, Appellant's final appellate claim fails.

Judgment of sentence affirmed.

Judge Pellegrini joins.

Judge King did not participate in the consideration or decision of this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2021

- 14 -