J-S26020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK ALAN LEONE, JR. | : | |
| | : | |
| Appellant | : | No. 1511 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 29, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003128-2022

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED: SEPTEMBER 9, 2024**

Appellant, Patrick Alan Leone, Jr., appeals from the judgment of sentence entered on March 29, 2023, as made final by the denial of Appellant's post-sentence motion on September 29, 2023.  We affirm.

On November 28, 2022, Appellant pleaded guilty to involuntary deviate sexual intercourse and corruption of minors.[1]  Following the plea, the trial court ordered Appellant to be assessed by the Pennsylvania Sexual Offenders Assessment Board ("SOAB"), to determine whether Appellant should be classified as a sexually violent predator ("SVP").  It then scheduled a combined SVP and sentencing hearing for a later date.

---

[1] 18 Pa.C.S.A. §§ 3123(a)(7) and 6301(a)(1)(ii), respectively.

Appellant's assessment was performed by Robert M. Stein, Ph.D., a licensed psychologist and member of the SOAB. Within the assessment report, Dr. Stein described the factual basis for Appellant's offenses:

> On [May 24, 2022,] police were dispatched to an area residence for an unknown problem. Upon arrival[,] police were flagged down by a woman who reported that a [16-year-old girl] was inside the residence and had been sexually assaulted by her stepfather. Police met with the victim's mother who reported that [Appellant], the victim's stepfather, found alcohol in the victim's room. There was an argument and the victim packed some things and left the home. [Appellant] explained to his wife that he and the victim had been having an affair. [Appellant] then told the victim's mother (his wife) that he was leaving, not going to jail, and he was going to kill himself. He told his wife they did not have intercourse but that the victim had performed oral sex on him. He then left in his work truck. While police were talking to [the mother], [Appellant] was calling her. Police then spoke with [Appellant] over the phone. He told them he was going to kill himself, that he had no other option as he screwed his family up, his life, and everything else. He stated he would not get to see his kids grow up and he would have to have supervised visitation because he "[f'ed] up."
>
> The victim told police that the last sexual contact with [Appellant] was [two] weeks prior and that he made her perform oral sex on him and he "finished" in her mouth, which she stated was disgusting. In the past he groped her breasts and touched her vagina with his hands and fingers. This happened on multiple occasions.
>
> In [a] forensic interview on [May 31, 2022,] the victim reported that [Appellant] had been sexually abusing her since [she was in the] 7th grade. It started with touching and grabbing her breast and butt outside the clothes and eventually moved to under her clothing. He would take her hand and force her to play with his genitals and if she tried to pull away he would get mad. He would take things away from her if she refused.

The victim reported that he placed cameras in her bedroom and her sister's bedroom and would watch them on his phone. She would have to go into his bedroom to say hello and when she did he would have his pants down and was masturbating. He has pushed her into his bed, laid on top of her, and put his penis in her mouth. He would take his penis and hang it over her mouth and take his fingers and open her mouth so he could put his penis in it. He would use his tongue all over her vagina and said this happened when her mother was not home. She stated that she was submissive because she did not want to get hurt or fight with him. He would put his penis on her vagina and "jerk off" to ejaculation on her butt. He would say "I want you so bad and love you more than I should" while it was happening.

The victim went on to report that he would enter the bathroom while she was in the shower and jerk off into the sink while watching her shower. He used vibrators on her on the inside and outside of her vagina. [The victim's mother] and siblings were not around when this happened. He would get jealous of her male friends, call her a bitch, would mentally abuse her, and would yell at her all the time. She "walked on eggshells" and he slapped her once in the face for talking back to him.

The victim reported that [Appellant] would refer to what was happening as an affair and she said it was not an affair. She related that it all came out after he found alcohol in her bedroom and a snowball effect took place resulting in disclosure of the assaults.

In a [June 30, 2022] interview with detectives, the victim added that [Appellant] would make comments to her such as "If you let me touch your boobs or touch me I will give you alcohol." He would give her either a mixed drink or Smirnoff in a bottle. She related that on a few occasions [Appellant] would hold his dog in order for the dog to perform oral sex on [Appellant]. One time the dog licked [Appellant's] penis. She tried to walk away from seeing this. She was age 16 when this happened. She advised that when she was age 13, on multiple occasions, he placed his penis in her mouth and at times would force his penis in her mouth.

[Appellant] did not speak with police about the offense.

- 3 -

Based on the victim's report of acts starting in [the] 7th grade, the time frame given in the criminal information is [March 5, 2018 to May 24, 2022], a period of over [four] years. She would have been age 12-13 when [the] acts started.

Appellant's SOAB Assessment Report, 1/17/23, at 2-3.

Dr. Stein next considered the 15 factors required by 42 Pa.C.S.A. § 9799.24(b):

FACTS OF THE CURRENT OFFENSE:

1. <u>Whether the offense involved multiple victims</u>: The offense involved a single victim, which is associated with lesser "practice" or risk taking than an offense involving multiple victims.

2. <u>Whether the individual exceeded the means necessary to achieve the offense</u>: The victim reported verbal and physical abuse as part of the overall course of conduct.

3. <u>The nature of the sexual contact with the victim</u>: Contact included sexual touching and oral sex both ways.

4. <u>The relationship of the individual to the victim</u>: The victim was a stepdaughter.

5. <u>Age of the victim</u>: The victim was age 12-13 when [the] acts started. This is consistent with sexual deviance.

6. <u>Whether the offense included a display of unusual cruelty by the individual during the commission of the crime</u>: There was no unusual cruelty.

7. <u>The mental capacity of the victim</u>: The victim was of normal capacity.

PRIOR OFFENSE HISTORY:

1. <u>The individual's prior criminal record (sexual and nonsexual)</u>: There is a limited criminal history as noted above that involved a violent crime (Battery).

2. <u>Whether the individual completed any prior sentences</u>: There is no report of violation of supervision.

3. <u>Whether the individual participated in available programs for sexual offenders</u>: There is no history of sex offense or court-ordered treatment.

CHARACTERISTICS OF THE DEFENDANT:

1. <u>Age of the individual</u>: [Appellant] was age 45 when [the] acts started and was therefore a mature adult. The victim was 12-13. This is consistent with sexual deviance.

2. <u>Use of illegal drugs by the individual</u>: There is no information about use of illegal drugs.

3. <u>Any mental illness, mental disability, or mental abnormality</u>: He is currently being treated psychiatrically for depression.

4. <u>Behavioral characteristics that contribute to the individual's conduct</u>: In addition to the lengthy duration of sexual assault, the course of conduct indicates that [Appellant] had a sexual obsession with the victim which involved various aspects of control of her life, with use of cameras in her room, calling the abuse an affair, manipulating her with alcohol, physical abuse on at least one occasion, and jealousy over male friends.

Factors that are supported in the sexual assessment field as reasonably related to the risk of re-offense:

Prior violent offense is all associated with increased risk.

*Id.* at 4-5.

Dr. Stein concluded that Appellant suffers from the mental abnormality of "Other Specified Paraphilic Disorder: Non-Consent." *Id.* at 5. He concluded that this was a non-curable, lifetime condition that "would override [Appellant's] emotional/volitional control" and "ma[de] sexual re-offending

likely if [Appellant were] given unsupervised access to underage girls." *Id.* at 5-6.

Finally, Dr. Stein concluded that Appellant "meets the criteria to be classified as a[n SVP] under the [Sex Offender and Registration Act ('SORNA')]." *Id.* at 6.

Dr. Stein was the only witness to testify during Appellant's March 29, 2023 SVP hearing. At this hearing, the trial court admitted Dr. Stein's January 17, 2023 assessment report and Dr. Stein testified consistently with his report. *See* N.T. SVP Hearing, 3/29/23, at 1-32.

At the conclusion of the hearing, the trial court determined that Appellant is an SVP. *Id.* at 51. The trial court then sentenced Appellant to serve the negotiated, aggregate term of eight to 16 years in prison, followed by three years of probation, for his convictions. *Id.* at 52-53.

Following the *nunc pro tunc* restoration of Appellant's post-sentence and appellate rights, Appellant filed a post-sentence motion, where he claimed that the trial court's SVP determination was against the weight of the evidence because: "[A]ppellant's offenses did not involve multiple victims, the victim was of normal mental capacity, no unnecessary means used, there was no unusual cruelty, no history of failed sex offender treatment, and [Appellant's] decreased likelihood to re-offend due to his age." Appellant's Post-Sentence Motion, 6/30/23, at 2-3.

The trial court denied Appellant's post-sentence motion on September 29, 2023 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> The trial court misapplied the law or its decision denying a new trial was manifestly unreasonable based on the trial court's weighing of the evidence presented at the SVP hearing in support of [] finding Appellant SVP when numerous factors relied on by SOAB expert, Dr. Robert Stein, in rendering his opinion went against a determination that [Appellant] met the statutory criteria for SVP including that [Appellant's] offenses did not involve multiple victims, the victim was of normal mental capacity, no unnecessary means used, there was no unusual cruelty, no history of failed sex offender treatment, and [Appellant's] decreased likelihood to re-offend due to his age.

Appellant's Brief at 4.

As our Supreme Court has explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (citations, emphasis, and some quotation marks omitted).

Within Appellant's brief, Appellant essentially claims that the trial court's SVP determination was against the weight of the evidence because "the

Commonwealth's expert acknowledged that multiple factors went against a finding that [Appellant] was likely to re-offend."[2]  **See** Appellant's Brief at 16.

"The determination of a defendant's SVP status may only be made following an assessment by the [SOAB] and [a] hearing before the trial court." **Commonwealth v. Fuentes**, 991 A.2d 935, 941-942 (Pa. Super. 2010) (*en banc*).  To designate a defendant an SVP, the trial court must conclude that the Commonwealth proved, by clear and convincing evidence, "that the individual is a sexually violent predator."  42 Pa.C.S.A. § 9799.24(e)(3).

The clear and convincing standard governing a determination of SVP status "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  **Commonwealth v. Meals**, 912 A.2d 213, 219 (quotation marks, citations, and brackets omitted).

---

[2] Within Appellant's brief, Appellant also argues that the SVP determination was against the weight of the evidence because Dr. Stein applied an amorphous standard when concluding that he was an SVP.  According to Appellant, the trial court's SVP determination was against the weight of the evidence because this amorphous standard presented the trial court with "no reasonable way" to make the SVP determination.  **See** Appellant's Brief at 22.  Appellant did not raise this weight of the evidence claim before the trial court or in his Rule 1925(b) statement of errors complained of on appeal.  Therefore, this aspect of Appellant's claim is waived.  **See Commonwealth v. Rivera**, 238 A.3d 482, 497 (Pa. Super. 2020) ("a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.  Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion") (quotation marks, citations, and brackets omitted); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b)] Statement . . . are waived").

Section 9799.12 of SORNA defines the term "sexually violent predator" as:

> [a]n individual who committed a sexually violent offense under the laws of this Commonwealth or an attempt, conspiracy or solicitation to commit a sexually violent offense under the laws of this Commonwealth on or after December 20, 2012, who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12; *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses"). A "sexually violent offense" is defined by SORNA as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted." 42 Pa.C.S.A. § 9799.12. "Predatory" is defined by SORNA as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Under Section 9799.24 of SORNA, after a defendant has been convicted of a sexually violent offense but before sentencing, the trial court is required to order the SOAB to conduct an "assessment of the individual to determine if

the individual should be classified as a [SVP]." 42 Pa.C.S.A. § 9799.24(a) and

(b). In performing its assessment, the SOAB examines, among other things,

the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

> (iv) Behavioral characteristics that contribute to the individual's conduct.
>
> (4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1-4).

As our Supreme Court has held, the above factors do not "operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification." **Meals**, 912 A.2d at 222. Therefore, and contrary to Appellant's current claim, the mere fact that some of the above "factors went against a finding that [Appellant] was likely to re-offend" does not render the trial court's SVP determination against the weight of the evidence. Moreover, as the trial court ably explained, its denial of Appellant's post-sentence motion was clearly within its discretion:

> Based upon all the information, Dr. Stein determined that [Appellant] suffers from a Mental Abnormality/Personality Disorder as defined in the Act.
>
> Dr. Stein concluded that, in his professional opinion within a reasonable degree of professional certainty, [Appellant] meets the criteria to be classified as an SVP under the Act.
>
> [Appellant's] contention that Dr. Stein testified that "[Appellant] did not exceed the means necessary to commit the offense" is factually incorrect and belied by the record. As noted above, Dr. Stein did find that [Appellant] used verbal and physical abuse as part of the overall course of conduct. In addition, [Appellant's] contention that Dr. Stein determined that there was a decreased likelihood for him to re-offend due to his age is also belied by the record. Dr. Stein opined that "[w]ith such a persistent and lengthy course of sexual assault of his stepdaughter, there is sufficient evidence for a condition that makes sexual re-offending likely if given unsupervised access to underage

girls." Moreover, Dr. Stein opined that [Appellant] has a condition called "Specified Paraphilic Disorder: Non-Consent," and that this is a lifetime condition.

Dr. Stein was questioned on cross-examination in regard to several factors that would increase the risk of re-offending, but were not present with respect to [Appellant]. However, and as previously indicated, with regard to the various assessment factors, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. In addition, "the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element." *Commonwealth v. Stephens*, 74 A.3d 1034, 1039 (Pa. Super. 2013) (citations omitted).

. . .

Dr. Stein complied with all [requirements of 42 Pa.C.S.A. § 9799.24] and expertly concluded to a reasonable degree of professional certainty that [Appellant] meets the requirements to be designated an SVP. At the conclusion of the SVP hearing, the [trial court] found Dr. Stein to be credible, and determined that his testimony and the contents of his assessment proved to the [trial court] by clear and convincing evidence that [Appellant] met the criteria for an SVP. . . . [This] conclusion is not contrary to the evidence, does not shock the [trial court's] sense of justice, and is appropriate.

Trial Court Opinion, 9/29/23, at 4-6 (some citations omitted).

We agree with the trial court's able explanation and conclude that it did not abuse its discretion when it denied Appellant's weight of the evidence claim.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/9/2024