J-S37031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERWIN BRADLEY | : | |
| | : | |
| Appellant | : | No. 2374 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 22, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0003970-2021

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED MARCH 25, 2025**

Derwin Bradley ("Bradley") appeals from the judgment of sentence following his convictions for second-degree murder and related offenses.[1]  We affirm.

The trial court set forth the following factual and procedural history:

> On August 3, 2020, Bradley's co-defendant, . . . Johns . . ., posted he was selling a firearm on his Instagram account.  Cwame Moore ("Moore") saw this post and direct[-]messaged Johns[,] "You gone sell that jawn?"  In response, Johns agreed to sell Moore the firearm.  On August 4, 2020, Johns and Moore exchanged cell phone numbers via Instagram direct[-]message.  On the same day, Johns texted Moore to meet him at 934 Pennell Street in Chester, Pennsylvania for the transaction.  Moore asked his cousin, Michael McCracken ("McCracken"), for a ride to Chester because McCracken had a license to carry a firearm.  Moore also asked a long-time friend Majesty Moreland ("Moreland") to join

---

[1] **See** 18 Pa.C.S.A. § 2502(b).  The appeal of Bradley's co-defendant, Jaahir Davonne Johns ("Johns"), with whom Bradley was jointly tried, is before this Court at No. 1199 EDA 2023.

them. Moreland followed Moore and McCracken to Chester[] in her vehicle.

Upon arrival at 934 Pennell Street, [Moore and McCracken] parked and waited for Johns. After approximately ten minutes, Johns arrived in a red vehicle. Johns informed Moore he needed to get the firearm from another individual and drove away. Moore and McCracken, with Moreland following, drove to a nearby Sunoco gas station to wait for Johns. After another ten minutes, Johns called Moore and told him to return to 934 Pennell Street. Moore and McCracken, with Moreland following, drove back to 934 Pennell Street. Moore and McCracken parked at the initial location. Moreland parked approximately a street away from the initial location and remained in her vehicle. Moore and McCracken met Johns at the corner[] on foot.

Johns told Moore and McCracken they were getting into another vehicle. All three walked around the corner to a silver Acura SUV . . .. Johns got into the front driver's side seat, Moore got into the rear driver's side seat, McCracken got into the rear passenger seat, and Bradley sat in the front passenger seat with a firearm in his lap.

Johns then turned the vehicle around and entered an alleyway between Lloyd and Pennell Streets. Johns stopped at the entrance of the alleyway and opened the driver's side door. Then, Johns pointed a firearm at Moore. Immediately, McCracken opened the rear passenger door and ran. Johns stepped out of the SUV, pointed his firearm, and fired it multiple times in McCracken's direction. Moore and Bradley remained in the SUV.

Johns returned to the SUV and drove down the remainder of the alleyway. Johns stopped the vehicle once they neared 9th Street. Then, Bradley turned, pointed his firearm at Moore's head, and told Moore to empty his pockets. Moore emptied the contents of his pockets on the floor of the vehicle, including $2,000 in cash. Johns and Bradley let Moore out of the vehicle. Immediately, Moore ran back to McCracken in the alleyway. McCracken suffered from multiple gunshot wounds and could no longer stand.

. . . [A]t approximately 6:00 p.m., Chester City police were dispatched . . .. Officer Geoffrey Walls ("Officer Walls") was the second officer to arrive at the scene. In the alleyway between Lloyd Street and Pennell Streets, Officer Walls found McCraken[]

- 2 -

suffering from gunshot wounds. Emergency services arrived and took McCracken to Crozer-Chester Medical Center in Upland, Pennsylvania. McCracken died later that day.

* * * *

[I]n February [] 2021, the Chester City Police Department filed a criminal complaint and arrest warrant for Bradley. . . ..

. . . Bradley was charged by an Information containing 18 counts on January 9, 2023.

A jury trial was held from January 9, 2023, through January 13, 2023, and on January 17, 2023. The Commonwealth did not present [the charged offense] conspiracy to murder of the second [d]egree, to the jury. The remaining 17 counts proceeded to trial. On January 17, 2023, a verdict was recorded. Bradley was found guilty of[, *inter alia*, second-degree murder (or "felony murder")] . . .

[I]n August [] 2023, a sentencing hearing was held. . . . Th[e trial c]ourt sentenced Bradley to an aggregate period of confinement of life without the possibility of parole.

Trial Ct. Op., 1/26/24, at 1-5 (footnotes and citations to the record omitted).

Bradley timely appealed, and both he and the trial court complied with

Pa.R.A.P. 1925.

Bradley raises the following issue for our review:

Whether the evidence is insufficient to sustain [Bradley's] murder in the second degree conviction where the Commonwealth failed to prove beyond a reasonable doubt that [he] committed a homicide while engaged as a principal or an accomplice in the perpetration of a felony.

Bradley's Brief at 4 (capitalization omitted).

Our standard of review for sufficiency issues is as follows:

Our applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that

evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

***Commonwealth v. Dewald***, 317 A.3d 1020, 1038 (Pa. Super. 2024)

(internal citations, quotations, brackets, and indentation omitted).

Bradley contests the sufficiency of the evidence for his second-degree murder, or felony murder, conviction. This Court has explained the applicable law:

Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.[A.] § 2502(b). [Section] 2502(d) defines perpetration of a felony as:

[T]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

18 Pa.C.S.[A.] § 2502(d) []. The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim.

- 4 -

*Commonwealth v. Rivera*, 238 A.3d 482, 500 (Pa. Super. 2020).

Further, an actor may be guilty of felony murder even if the actor is not the slayer whose act caused the death:

> In *Commonwealth v. Melton*, [ ] 406 Pa. 343, 178 A.2d 728, 731 ([Pa.] 1962), [ ] our Supreme Court explained that not only the killer, but all participants in a felony, including the getaway driver, are equally guilty of felony murder when a killing by a felon occurs.
>
> The statute defining second[-]degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. . . . It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.
>
> *Commonwealth v. Lambert*, 795 A.2d 1010, 1022-23 (Pa. Super. 2002) (*en banc*) (some citations omitted).

*Id*. at 500–01.

Lastly, where a robbery and murder occur in close proximity, it is immaterial for purposes of felony murder that the killing precedes the robbery, so long as the killing is used to effectuate the robbery. *See*, *e.g.*, *Commonwealth v. Williams*, 950 A.2d 294, 321 (Pa. 2008) (citing *Commonwealth v. Robertson*, 463 A.2d 1133, 1136 (Pa. Super. 1983) for the proposition that "the requisite intent to support a robbery or felony murder

conviction can be established by inferences arising from circumstances or acts committed shortly after the killing").

Bradley argues the evidence was insufficient to support his felony murder conviction because the Commonwealth "groundless[ly] accused [him] of the underlying felony of robbery as the predicate offense . . .." Bradley's Brief at 10. Specifically, Bradley argues that Johns shot McCracken before he, Bradley, robbed Moore; accordingly, the murder of Johns occurred before the robbery, and, as such, the murder did not occur during the course of the robbery. Thus, Bradley concludes, the evidence was insufficient for his felony murder conviction. *See id*. at 11-12.

The trial court considered Bradley's argument and concluded it merits no relief. With regard to the conspiracy between Bradley and Johns to rob McCracken and Moore, the court explained that Bradley was already in the front passenger seat of the SUV with a gun in his lap when Johns directed Moore and McCracken to enter the SUV, and after Johns's shooting of McCracken and Bradley's robbery of Moore, they fled together in the SUV. *See* Trial Ct. Op., at 13-15. Additionally:

> In this matter, the felony at issue was a robbery. As discussed above, Bradley and Johns were co-conspirators for the commission of the robbery of McCracken and Moore. Johns initiated the robbery when he pointed the firearm at . . . Moore, which caused McCracken to flee the vehicle. However, the robbery was incomplete after Johns shot McCracken. Bradley pointed his firearm at Moore's head and told him to empty his pockets. Johns killed McCracken in furtherance of robbery because Johns and Bradley still intended to commit the robbery after killing McCracken. Bradley demonstrated this when he pointed the

- 6 -

> firearm at Moore's head with the intent to rob him after Johns shot McCracken. This evidence established that Bradley had the intent to commit the underlying felony of the robbery after the slaying of McCracken. Therefore, there was sufficient evidence for the jury to infer that Bradley was guilty, beyond a reasonable doubt, of murder of the second degree.

Trial Ct. Op., 1/26/24, at 19 (citations to the record omitted).

Following our review, we likewise conclude Bradley's argument is meritless. The evidence in the light most favorable to the Commonwealth shows that Johns and Moore arranged for Moore to purchase a firearm from Johns. At the time the transaction was to occur, Johns told Moore and McCracken to get into the backseat of an SUV in which Bradley sat, and drove the vehicle into an alley, at which point Bradley, in the front passenger seat, already had a gun out and in his lap. *See* N.T., 1/11/23, at 28-30. Then, Johns pulled a gun out of his pants and pointed it at Moore, after which McCracken attempted to flee. After Johns shot McCracken, he got back in the car, drove down the alley, and Bradley pointed his gun at Moore, told him to empty his pockets, and took approximately two thousand dollars from him. *See id*. at 32-33. The above evidence shows Johns and Bradley agreed to rob Moore, during which Johns shot McCracken, and just after which Bradley completed the robbery by pointing the gun at Moore and demanding he empty his pockets. The evidence thus establishes that Johns killed McCracken during the robbery of Moore that Johns and Bradley agreed to commit. Accordingly, the evidence is sufficient to sustain Bradley's conviction for felony murder.

*See* 18 Pa.C.S.A. § 2502(b); *Rivera*, 238 A.3d at 500-01; *Williams*, 950 A.2d at 321.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/25/2025